STATE OF MISSOURI at the relation of KANSAS CITY, a Municipal Cor- poration, Relator, v. SCHOOL DISTRICT OF KANSAS CITY ET AL.—62 S. W. (2d) 813.

Court en Banc, July 31, 1933.

*George Kingsley, Joshua Barbee* and *J. C. Petherbridge* for relator.

290

*Henry L. McCune* and *McCune, Caldwell & Downing* for respondents.

*John C. Meredith* and *Meredith & Harwood, amicus curiae.*

ELLISON, J.—Mandamus. By a proceeding inaugurated with the passage of Ordinance No. 55,188 in December, 1927, Kansas City increased the width of Fifteenth Street to 100 feet between Campbell Street on the east and Baltimore Avenue on the west. The added width was taken off of the abutting property on the south side of the street by condemnation. To pay the costs and damages thus incurred the ordinance created a benefit district within which special assessments were levied. This district extended some six blocks east of the part of the street widened and also north and south of it. Included in this area and fronting on Fifteenth Street (but some three blocks east of the widened portion thereof) was Manual Training High School, located on ten lots of ground and owned by the respondent School District of Kansas City. The benefit assessment against that particular land was $12,250. This original proceeding in mandamus is to compel the school board to pay the assessment.

The respondent school board and the members thereof have waived the issuance of our alternative writ and filed return to the relator's petition, treating it as the writ. Relator has filed a reply to respondents' return. These pleadings make up the issues, which are all issues of law. The parties have filed a stipulation requesting this court to accept jurisdiction of the cause.

The gist of respondent's specific defenses is that the proceeding by which Fifteenth Street was widened was a condemnation proceeding under Article VI of the Kansas City Charter; that under said article special benefit assessments may be made only against *private* property; that the School District of Kansas City is a *public* corporation, and its lands and money are public property pledged to particular public uses; that its lands cannot be subjected to benefit assessments of the character authorized by said Article VI, nor can its monies be used to pay such assessments; that even if under certain sections of Article VIII of the charter benefit assessments may be levied against school lands, the Fifteenth Street proceeding did not come within that article and the procedural requirements thereof were not followed.

In support of its contention that the school district is legally bound to pay the assessment relator cites us first to Sections 1 and 3 of Article I of the charter generally defining the powers of the municipality, and authorizing it:

(1) ''To assess, levy and collect taxes for all general and special purposes on all subjects or objects of taxation and to provide for enforcing the prompt payment thereof by any appropriate means.''

(3) ''To make and collect special assessments for public improvements, and to provide for enforcing the prompt payment thereof by any appropriate means.''

In addition to these relator relies on Articles VI and VIII. Article VI is entitled ''Condemning and Damaging Private Prop-

erty." (In the quotations following the emphasis is ours.) By the first section thereof, Section 128, it is provided that: "The city may exercise the power of eminent domain and the power of determining the damage caused to property by any public work or improvement or use, or restriction of use, and the power of making and levying special assessments, in the manner prescribed in this charter, or in any other lawful manner. . . ."

The next section, Section 129, referring to land taken or damaged, says: "In case same is to be paid for in whole or in part by special assessments upon real estate, the council shall also by ordinance prescribe the limits of the district within which *private* property shall be deemed to be benefited by the proposed improvement, and be assessed and charged to pay compensation therefor. . . ."

Succeeding sections provide for the preparation of a map or plat by the city engineer; the filing of condemnation proceedings in the Jackson County Circuit Court (or in the Municipal Court when authorized); the impaneling of a jury of six freeholders; the fixing of a date and place for trial before the jury; the giving of notice by publication or personal service; procedure at the trial; rules for fixing compensation; and other matters.

Section 151 says: "If the land to be purchased, taken or damaged, as aforesaid, is to be paid for by the assessment of benefits upon the real estate, . . . the jury of freeholders, to pay compensation for the land purchased, taken or damaged, shall determine the amount of benefit to the city at large, inclusive of any benefit to the property of the city, and shall determine the value of the benefit of the proposed improvement to each and every lot, piece and parcel of *private* real property, exclusive of the buildings and improvements thereon, within the benefit district, if any benefit is found to accrue thereto."

The article then goes on to provide for the rendering of a verdict by the jury; a review of the verdict by the court; for the filing of motions for new trial; for the confirmation of the verdict, unless set aside, and the entry of judgment thereon. Under Section 156 the judgment, among other things, is required to adjudge: "That the city recover the respective amounts assessed in said verdict against *private* real property, and that the several lots, tracts and parcels of *private* real estate so assessed in said verdict stand severally charged and be bound for the payment of the assessments thereon, respectively, and the interest that may accrue thereon."

Section 158 makes "the several amounts so assessed by the verdict of the jury against *private* property" a lien thereon; and Section 181 authorizes the issuance by the city of condemnation certificates "in an amount not to exceed the total amount of assessments against the *private* property shown in any such verdict," to raise money, in

advance of the due date of the assessments, to pay for land purchased, taken or damaged.

Article VIII of the charter is entitled "Public Improvements." In general it deals with the improvement of highways by grading. paving, building sidewalks, planting and caring for trees and shrubbery; acquiring, constructing and maintaining bridges, viaducts, tunnels and the like. It also covers wharves, levees, drains, sewers, improvement of·watercourses, and numerous other subjects of municipal action. Section 240 provides such public improvements may be paid for, among other ways, "in whole or in part by special assessments on land or special tax bills or securities evidencing special assessments."

A resolution or declaration of public necessity is adopted and entered by the Director of Public Works. He holds a hearing in respect to the contemplated improvement giving notice thereof. If it be paving, resident owners of abutting property may remonstrate. If the director does not determine against the construction of the improvement he adopts plans and specifications and advertises for bids. A contract is entered into with the lowest bidder, but this is subject to confirmation by an ordinance passed by the council. The contractor may be paid either by special tax bills, or wholly or partly in cash. The ordinance confirming the contract must provide how the contractor is to be paid, and if by special assessments, how these shall be made and levied. Special assessments must, unless otherwise provided, be made under some one of the following three rules: the front foot rule; the valuation rule; or the area rule. In no event are assessments to be charged against public thoroughfares, except parkways of unusual width. There are further special provisions for paving. grading and sewers, and about tax bills and suits thereon. Finally the concluding section ·of the article, on which the relator especially relies, provides:

"Sec. 319. Whenever any land liable to be assessed with special benefits to pay for any public improvement mentioned in this charter shall be owned by a railroad corporation, cemetery association, county, school district, or any other public or quasi-public corporation, or by any other corporation, association, society or person as trustee, such land shall be assessed and a special tax bill issued to evidence the same in the same manner as though the same were the property of a private person; and if a sale of such land to enforce such assessment is contrary to the public policy or the laws of this State then the amount of such assessment, as may be evidenced by the special tax bill, shall be paid by such railroad corporation, cemetery association, school district, county or other public or quasi-public corporation, or by such association, society or person as trustee. Suits shall be instituted to enforce the collection of any such special tax bills in the same manner and in the same courts as on other special tax

bills, and the judgment in any such suit, if for the plaintiff, shall be a personal one against the owner of the land assessed, for the amount due on such tax bill; but no such judgment shall be rendered in any such suit for an amount greater than the value of the land so assessed; and the defendant or defendants in any such suit may, by appropriate pleading, raise the issue of the value of the land so assessed; and when that issue is raised the judgment, if any, shall be enforced as other judgments against the judgment debtor; but no such lands shall be sold under such judgments. . . .'' (Italics ours.)

It is conceded the condemnation proceedings here under review were had under Article VI of the charter. The initial ordinance, No. 55188, was entitled ''An ordinance to open, widen, extend and establish Fifteenth (15th) Street from the east line of Baltimore Avenue to the west line of Campbell Street; condemning the necessary lands therefor; providing for the cost thereof, and authorizing the issuing of condemnation fund certificates.'' In other words, it was strictly an eminent domain proceeding with a special assessment feature, and did not provide for the *construction* of any public improvement. Section 2 of the ordinance required that the amount allowed for property condemned ''shall be wholly raised by special assessment made against the city and against the several lots, tracts and parcels of *private* property within the benefit district *described* and set out in the next succeeding section, all in accordance with Article VI of the Charter of Kansas City, Missouri.'' Section 3 said ''The Council hereby determines and prescribes the limits within which *private* property shall be deemed benefited by the improvement herein proposed,'' following which is a detailed description of the boundaries of the benefit district. Section 5 provides that the damages caused by ''such public improvement'' be ascertained in a court proceeding in the Jackson County Circuit Court in the manner provided by Article VI of the charter.

A trial in the Jackson County Circuit Court followed after due notice had been given by publication. A number of interested property owners attended the trial, represented by counsel. The respondent school district, however, did not appear. The verdict of the jury made special assessments ''against the several lots and parcels of *private* property within the benefit district,'' enumerating them, and included the ten lots owned by the Kansas City School District. In due time motions for new trial were filed by various interested parties (the school district was not one of them). These being overruled, the trial court confirmed the verdict and judgment was entered thereon accordingly in favor of the city, and against the various tracts of land in the benefit district in the several amounts specified in the jury's verdict.

Some of the property owners appealed to the Supreme Court and

the judgment of the Jackson County Circuit Court was affirmed in Kansas City v. Jones Store Co., 325 Mo. 226, 252, 28 S. W. (2d) 1008, 1017. The Kansas City School District was not an appellant in that case. It is, however, mentioned in the opinion, as follows: ''It is further claimed by some of these appellants that the verdict was, void because some public property was assessed. The Kansas City School District was assessed a special benefit of $14,050. The school district is not complaining and these parties do not appear as tax-payers in the school district. They are in court only as to those to whom benefits were assessed as parties to the proceeding. They have no right to complain for the school district.''

On the foregoing facts two main questions are raised: (1) Was the land of the school district subject to special assessment for benefits in the proceedings? (2) And, if it was not, is the judgment rendered by the Jackson County Circuit Court against the school district, from which the latter did not appeal, nevertheless binding? In other words, is the school district by its defense in the instant mandamus proceeding making a collateral attack on the judgment of the Jackson County Circuit Court, or was that judgment void, so far as the school district is concerned?

■ I. It is obvious that Article VI of the charter furnishes no basis for an assessment of special benefits against public school property. All the way through it speaks of and authorizes only special assessments against private property. Land owned and used for public school purposes is not private property but strictly public property. This was expressly decided by this court en banc in City of Edina to Use of Pioneer Trust Co. v. School District, 305 Mo. 452, 267 S. W. 112, 36 A. L. R. 1532, 1540, note. It had been so considered in earlier Missouri cases. In City of Clinton ex rel. Thornton v. Henry County, 115 Mo. 557, 568, 569, 22 S. W. 494, 495, 496, 37 Am. St. Rep. 415, referring to Abercrombie v. Ely, 60 Mo. 23, this court said: ''The effort in that case was to enforce a mechanic's lien against a schoolhouse which was public property.'' And further on the opinion said: ''In the first place property owned by a county or other municipal corporation, and used for public purposes, cannot be sold on execution. . . . Hence it has been held that a schoolhouse cannot be sold under a judgment against the board of education,'' citing State to use, Board of Education v. Tiedemann, 69 Mo. 306. What is said in Thogmartin v. Nevada School District, 189 Mo. App. 10, 176 S. W. 473, cited by relator here, does not militate against this view but accords with it.

■ The contention is made, however, that Sections 1 and 3, Article I of the charter generally authorizing the city ''to assess, levy and, collect taxes for all general and special purposes,'' and ''to make and collect special assessments for public improvements,'' and especially Section 319 of Article VIII, warrant the special assessment

against the school district. Section 319 undeniably contains broad language. It says "whenever any land liable to be assessed with special benefits to pay for any public improvement mentioned in this charter shall be owned by a . . . school district," the land shall be assessed in the same manner as if owned by a private person; and if a sale thereof to enforce the assessment would be contrary to law or public policy, the amount thereof shall be paid by the school district, and suit may be brought thereon and a personal judgment obtained.

Relator asserts in its brief the opening lines of the section "cannot be honestly and fairly construed" to mean anything other than that under the Kansas City Charter public school property is subject to special assessment for any public improvement whatsoever mentioned therein, the same as private property. This part of the section is quoted with the emphasis placed as follows: "whenever any land liable to be assessed with special benefits to pay for *any public improvement mentioned in the charter* shall be owned by a . . . school district," etc. But we do not agree the foregoing is the only interpretation which fairly can be given the section. True. it begins with the adverb "whenever," which is primarily an adverb of time. And so treated, possibly the sentence might mean *at whatever time* land, which otherwise would be liable to special assessment for any public improvement authorized by the charter, happens to be owned by a school district, the assessment shall nevertheless be made and enforced as in the section provided. But very frequently the word "when" and sometimes the word "whenever" express a contingency. [Words and Phrases. First, Second, Third and Fourth Series.] That construction would or might make the language mean *if* the land is *liable* to assessment when owned by a school district, the succeeding provisions of the section shall apply. In that view of the matter the question of liability would depend on the other sections of the charter applying to the particular improvement. ·

There is good ground for contending the last mentioned construction is the proper one. It appears that in some instances public property is made subject to special assessment by the Kansas City Charter, or at least, is not expressly exempted therefrom. Thus, Section 223 in said Article VI, providing for the acquisition of right of way for sewer outlets outside the city, says the whole cost thereof. less the part paid by the city, "shall be collected by special tax assessments upon all lands, exclusive of highways, streets and alleys, embraced within" the benefit district. Section 263 of Article VIII provides that "in making assessments to pay for work on public streets boulevards. parkways and other public highways, other than for grading or regrading, or sewers, and except as herein otherwise expressly provided . . . each lot, tract and parcel of land fronting or abutting on the street . . . improved, shall be assessed and

charged according to the front foot rule." So, it seems, according to Section 266 "heavy" grading is assessed against the land in a zoned benefit district without any expressed restriction to private property. But Article VI, in providing for the assessment of special benefits in eminent domain proceedings, consistently in section after section, as we have seen, authorizes assessments only on *private* property. So, also, Section 233 of Article VII, providing for street grading, is similarly restrictive; and likewise Section 349 of Article IX. dealing with flood protection.

We are not to be understood as attempting to pass judgment on the meaning of any of the sections of the Kansas City Charter mentioned in this opinion, other than those directly involved in this case. What we do say is that if the framers thereof had intended that all the land owned by all the public or quasi-public entities mentioned in Section 319 should be liable to special assessment for any and all public improvements authorized by the charter, they could and certainly would have said so in clear, plain terms; and it seems they would have put the provision in that part of the charter defining the general powers of the city, rather than to have stated it in vague language in an isolated section dealing with "Public Improvements." It is extremely improbable they would have provided in Article VI that special benefit assessments in condemnation proceedings should be made against *private* property, if they had meant by Section 319 that all property, whether public or private, should be subject to assessment for that and all other public improvement purposes. At least it can be asserted with positiveness, and we so hold, that neither the general provisions of Sections 1 and 3 of Article I nor the ambiguous provisions of Section 319 are sufficient to overcome the explicit limitations imposed by Article VI. Public property belonging to a county, city or school district will not be held liable to special assessment for public improvements unless it is made so by express enactment or clear implication. [City of Clinton ex rel. Thornton v. Henry County, 115 Mo. 1. c. 567, 22 S. W. 1. c. 495, 37 Am. St. Rep. 415; St. Louis v. Brown, 155 Mo. 545, 561, 56 S. W. 298, 301; Barber Asphalt Paving Co. v. St. Joseph, 183 Mo. 451, 457, 82 S. W. 64, 65; City of Edina to Use of Pioneer Trust Co. v. School District, 305 Mo. 1. c. 461-2, 267 S. W. 1. c. 115, 36 A. L. R. 1532.]

Respondent contends further the payment of a special benefit assessment against its school property out of school monies would violate Section 11, Article X and Section 6, Article XI of the State Constitution in that school funds are pledged to particular educational uses and purposes and cannot be diverted therefrom to the payment of such assessments. Relator answers that argument by pointing out that under Sections 9555 and 9557, Revised Statutes 1929, the monies of a school district are placed in five funds: teachers fund; building fund; sinking fund; interest fund; and incidental

fund; and that while the first four of these are special and may be drawn against only for the purposes for which the funds were created, nevertheless, the *incidental* fund is not so hedged about and monies therein would be available for the payment of special benefit assessments. Attention is called also to the fact that by Section 6433, Revised Statutes 1929. the General Assembly has provided school land in cities of the first class may be subjected to special assessment for public improvements. We shall not go into these questions since we have held the Kansas City Charter does not make the land of school districts subject to special benefit assessments in condemnation proceedings.

■ TT. The next question is whether the judgment of the Jackson County Circuit Court in the Fifteenth Street condemnation suit is binding on the respondent school district in this mandamus proceeding, notwithstanding the fact that if the defenses presented here had been made in that suit the judgment against the school district would have been reversed. In other words can the school district in this case make a collateral attack on the judgment rendered in the condemnation suit.

There is no denying that the judgment rendered by the circuit court was a final judgment. [Schwab v. City of St. Louis, 310 Mo. 116, 137, 274 S. W. 1058. 1065.] But the proceeding provided for by the Kansas City Charter is peculiar. Under Section 131 thereof it is instituted by the filing in the circuit court of a certified copy of the condemnation ordinance together with the plat or map covering the improvement. These take the place of the petition or first pleading in an ordinary suit. As we have shown, the ordinance in this instance contemplated and provided only for the levying of special benefit assessments against *private* property. The map, according to the recitals in relator's petition in the instant mandamus proceeding. showed only the property to be *taken* and the names of the owners thereof. and the *extent* of the benefit district. This was all that Section 130 of the charter required it to show. In other words neither the ordinance nor the map disclosed that any property other than private property would be assessed with special benefits. In these circumstances the judgment, to the extent that it made such assessments, ranged outside the pleadings and was void. [Hecker v. Bleish. 319 Mo. 149. 175. 3 S. W. (2d) 1008. 1009.] This principle is sufficient to dispose of the question without deciding further whether the city *could* have subjected school land to special benefit assessments in the condemnation proceeding without sanction of the charter, even if the ordinance had so provided and the school district had not appealed.

In view of what was said in Kansas City v. Jones Store Co., supra, 325 Mo. 1. c. 252, 28 S. W. (2d) 1017, when the Fifteenth Street

condemnation suit was here on appeal, we will make this further ob- servation. Some of the appellants in the Jones Store case were con- tending the whole verdict of the jury was void because the public land of the relator herein, the Kansas City School District, had been assessed. The opinion said "the school district is not complaining." For fear our holding in the instant case, where the school district is complaining and we have held the assessment against it void, taken in connection with the opinion in the Jones Store case, may be con- strued as casting a shadow on the validity of all the other assess- ments made by the jury, we shall simply call attention to Section 158 in Article VI of the charter, which says that "no such assessment or the lien thereof shall be defeated or affected by any defect or ir- regularity affecting any other assessment, or from the rendering of any other assessment invalid in whole or in part."

For the reasons stated a peremptory writ against the respondent school district and the members of the school board is denied. All concur.