CITY OF ST. LOUIS V. SENTER COMMISSION COMPANY ET AL., Defendants, CHECOTAH REAL ESTATE & DEVELOPMENT COMPANY, Appellant.

CITY OF ST. LOUIS V. SENTER COMMISSION COMPANY ET AL., Defendants, REBECCA P. DUSENBERRY ET AL., Appellants.

CITY OF ST. LOUIS V. SENTER COMMISSION COMPANY ET AL., Defendants, FREDERICK D. HAMPSON ET AL., Appellants.

CITY OF ST. LOUIS V. SENTER COMMISSION COMPANY ET AL., Defendants, NATIONAL LEAD COMPANY, a Corporation, Appellant.

CITY OF ST. LOUIS V. SENTER COMMISSION COMPANY ET AL., Defendants, NATIONAL VENEER PACKAGE COMPANY, a Corporation, Appellant.—85 S. W. (2d) 21.

Court en Banc, July 10, 1935.

*Gustave A. Stamm* and *Maurice L. Stewart* for appellants.

*Charles M. Hay, John T. Hicks,* and *James B. Steiner* for respondent.

PER CURIAM:—This is a proceeding under the charter of the city of St. Louis in which appellants' property was assessed for benefits from the widening of Market Street. Appellants were not defendants in the suit to condemn the property taken for widening the street, because none of their property was taken or damaged.

They became parties to the proceeding by reason of their property having been included within the benefit or taxing district created by the commissioners, appointed by the circuit court, to determine the damages in the condemnation suit and to assess benefits to property resulting from the improvement. The report of the commissioners assessed benefits against the respective properties of appellants, and they each filed exceptions thereto which were overruled by the court. Judgment was entered against appellants' property for the amount of benefits approved and they have appealed therefrom. These appeals have been consolidated here and this court has jurisdiction of all of them, because of the constitutional questions raised, regardless of the amount involved.

These appeals are from the same proceeding to widen Market Street, under the authority of Ordinance 31656, approved April 18, 1922, and amended by Ordinance 35582, approved January 26, 1927, which is considered in City of St. Louis, v. Senter Commission Company, 336 Mo. 1209, 84 S. W. (2d) 133, which is decided concurrently herewith. The statement of facts made in the opinion in that case, concerning these ordinances and proceedings thereunder, is equally applicable to this case and appellants here make many of the same constitutional and jurisdictional objections as were made by the appellants in that case. These contentions are decided against appellants for the reasons stated in our opinion in that case.

Appellants herein make the further contentions, which were also made by the appellants in the other case but which are not there briefed and argued as thoroughly as they are by appellants here (appellants in the other case say that they adopt the brief and argument of appellants in this case on those points), that the benefits assessed in this proceeding are illegal because the benefits assessed in this proceeding are in excess of the damages by ($498,383.02) awarded herein for land taken in connection with the widening of Market Street, by reason of charging the costs of acquiring two blocks, for the Union Station Plaza, in the street widening proceeding; and also because of the failure to apportion any part of the cost of the Market Street widening to the property in the eight city blocks, abutting upon or adjacent to Market Street and within the benefit district established by the commissioners, which were privately owned at the effective date of Ordinance 31656 and which were later acquired by the city as sites for the Memorial Plaza and Municipal Auditorium.

The following facts, about the Union Station Plaza, were shown. Under the original widening Ordinance 31656, approved April 18, 1922, it was provided that the two blocks between Market Street and Chestnut Street from Eighteenth Street to Twentieth Street should be condemned for and as a part of widened Market Street. Shortly after the filing of the suit to condemn the property an ordinance was

adopted, No. 32019, approved November 18, 1922, calling an election on February 9, 1923, to vote upon a bond issue of $87,000,000 for a comprehensive improvement plan for the city. Proposition Two of the plan was as follows:

"For the acquisition of land in city blocks eight hundred and ninety-four (894) and nine hundred and three (903) for a public plaza opposite the Union Station on Market Street and extending from Eighteenth Street to Twentieth Street. Two million six hundred thousand dollars ($2,600,000)."

This proposition, together with nineteen others, carried at the election and thereafter Ordinance 32496, approved May 29, 1923, was adopted providing for the issuance of bonds to carry out the plans authorized at the election. This ordinance contained the following provisions:

"Two. Bonds numbered eight thousand six hundred and fifty-one (8,651) to eleven thousand two hundred and fifty (11,250), both inclusive, two million six hundred thousand dollars ($2,600,000), and the proceeds from their sale, shall be used 'For the acquisition of land in city blocks eight hundred and ninety-four (894) and nine hundred and three (903) for a public plaza opposite the Union Station on Market Street and extending from Eighteenth Street to Twentieth Street.' . . . The proceeds arising from the sale of bonds for each of the said separate purposes shall be kept separate and distinct, and such proceeds shall be used for the specific purpose herein prescribed and for no other; provided that if the sum voted and herein provided for any one or more of the above purposes should prove more than sufficient, or if it should finally be judicially determined that the sum voted for any one of the above purposes may not be used for such purpose, then such sum or such excess shall be placed to the credit of the general sinking fund of the City of St. Louis."

The commissioners' report herein was filed November 20, 1928. The total damages awarded, the special benefits assessed by them, the changes made by the court and the damages which were awarded for the property in the two blocks opposite the Union Station are shown by the following summary:

COMMISSIONERS' REPORT OF DAMAGES AND BENEFITS

Total Damages assessed ...........................$6,128,997.14
Total Benefits assessed ............................. 4,400,499.50

Excess of damages over benefits charged to City ......$1,728,497.64

Total Damages assessed ........................... 6,128,997.14
Damages assessed for all property in blocks 894 & 903 .. 2,447,125.00

Damages assessed for all other property taken ........$3,681,872.14

Total benefits assessed ........................... 4,400,499.50
Damages assessed for all property taken except blocks 894
 & 903 ..................................... 3,681,872.14

Excess of benefits over damages for all property taken
 except blocks 894 & 903 ......................$ 718,627.36

### FINAL JUDGMENT OF CIRCUIT COURT

Total Damages awarded ........................$6,234,479.55
Total Benefits approved ........................ 4,278,969.34

Excess of damages over benefits charged to City ......$1,955,510.21

Total Damages awarded ........................ 6,234,479.55
Total Damages paid for all property in blocks 894 & 903 $2,453,893.23

Damages awarded for all other property taken ........$3,780,586.32

Total Benefits approved ........................$4,278,969.34
Damages awarded for all property taken except blocks
 894 & 903 ................................... 3,780,586.32

Excess of benefits over damages for all property taken
 except blocks 894 & 903 ......................$ 498,383.02

The city argues that the sum of $498,383.02 is not an actual surplus of benefits over damages, even if damages are limited to the amount necessary to make Market Street 100 feet wide. They say that, if no part of these two blocks were taken for the street, it would only be sixty feet wide in front of the Union Station; and that it was necessary to take at least forty feet off of each of these blocks. These two blocks were 161 feet wide with an alley fifteen feet wide running through the center, leaving the lots on each side of the alley seventy-three feet long. The amount assessed by the commissioners as damages for the lots in the south half of these two blocks was $1,926,975. (This was increased $6768.23 by the court.) The city says that, if it had only appropriated the southern forty feet of the south half of both blocks, the lowest possible amount that it could have cost would have been 40/73rds of $1,926,975, or $1,055,876, and that this would not include consequential damages to the remaining thirty-three feet, which would have been substantial because buildings thereon would have been destroyed; that it would have probably cost almost as much to take the south forty feet of the south half of both blocks as to take the whole south half; and that benefits instead of

being $498,383.02 more than the damages for the actual widening of Market Street are in fact considerably less than the actual cost of making it only 100 feet wide. The city also says that the determination of the width of a street is a matter of legislative discretion which is not subject to judicial inquiry in a condemnation suit; that appellants, therefore, cannot be heard to object to taking more property than was necessary to make the street 100 feet wide in front of the Union Station; and that they are certainly not hurt by reason of the city paying for part of the property taken instead of assessing benefits against their property sufficient to pay for the entire cost. Appellants, on the other hand, contend that the cost of forty feet, necessary to make the street 100 feet wide there, cannot be charged in Market Street widening case because the city acquired it with funds derived from the bond issue; and that the ordinances providing for the bond election and issuance of bonds to acquire land for a plaza at the Union Station repealed at least that part of the Market Street widening ordinance, which included these two blocks in the property to be taken for the street, and appropriated them to a different use.

The question to be determined is: What was the effect, upon the condemnation proceeding and Ordinance 31656 which authorized it, of the ordinance submitting Proposition Two of the city improvement plan and other ordinances carrying it out after its adoption by the voters? ■ The primary rule of construction of statutes or ordinances is to ascertain and give effect to the lawmakers' intent. [Meyering v. Miller, 330 Mo. 885, 51 S. W. (2d) 65; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920.] This should be done from the words used, if possible, considering the language honestly and faithfully to ascertain its plain and rational meaning and to promote its object and manifest purpose. So considering the language of Proposition Two it is to be noted that it provides for issuing bonds to obtain money *"for the acquisition of land in city blocks 894 and 903* for a public plaza opposite the Union Station on Market Street." It should further be noted that it does not say "for the acquisition *of all of the land"* in these blocks, or even "for acquisition *of the land"* in these blocks. It only says that land is to be acquired "for a public plaza opposite the Union Station on Market Street." At the time this ordinance was enacted, to submit this proposition to the people, Market Street had already been established as a new highway for modern traffic, with minimum width of 100 feet, and the condemnation suit to acquire the land for so widening it had already been commenced. Clearly, by providing for a bond issue to obtain money for the acquisition of land in these two blocks for a public plaza on Market Street, it was not intended to cut the width of Market Street, in front of the Union Station, to less than 100 feet. Moreover, the ordinance widening Market Street and

authorizing the condemnation suit provided for the taking of land, in some places, to make a width of more than 100 feet. One of these places was in front of the Union Station, where it provided for the taking of all of the two blocks in question. Whatever this might be called, it was a rectangular open space beyond the 100-foot width of the street.

It should be noted also that the ordinance providing for the issuance of bonds stated "that if the sum . . . provided . . . should prove more than sufficient . . . such excess shall be placed to the credit of the general sinking fund of the city." Looking at the entire situation, we see that the city had commenced a suit for condemnation of land to widen Market Street, included in which was all of the land in the two blocks in front of the Union Station and which would provide for a wide open space there (we have held that it could do so because it was not an unreasonable provision to make, in connection with establishing the widened street, at a place where there might be great congestion of traffic); that to provide money for purchasing part of the land in these two blocks the city provided for a bond issue; and that the bond issue proposition stated that this land was to be acquired for a public plaza on Market Street which, of course, could mean on Market Street as it had been established when widened. Surely the most that can be said of the effect of this ordinance was that it provided money to pay for part of the land which the city was already authorized to acquire and had commenced to condemn. Calling it a plaza neither changed the size, shape or area of the land which the city had already commenced proceedings to acquire, nor did it substantially change the use which would necessarily be made of it. Since the word "plaza" is merely a word from the Spanish for an open square (Webster's International Dictionary; 48 C. J. 1228; Kelly v. Town of Hayward (Cal.), 219 Pac. 749; Church v. City of Portland (Ore.), 22 Pac. 528, 6 L. R. A. 259), what difference could it make whether Proposition Two said that the money was to be used for the acquisition of land in these blocks for a public plaza, for a public square, or for a rectangular open space? It did not thereby determine whether or not the whole space should be paved with paving brick, with asphalt, or with concrete, or whether there should be some grass plots or flower beds on part of it. Either way, there would still be no violence done to our language or to the original intent of the condemnation ordinance to call it a plaza. The obvious purpose of condemnation ordinance was to have an open space here, regardless of whether all of its surface was immediately used for travel or whether part of its use should be determined by future needs.

█ The bond issue clearly was provided to pay part of the costs of acquiring the land, in these two blocks, already included in the

condemnation suit. This was an expensive part of the project; appellants say that almost forty per cent of the cost of all property acquired was needed for these two blocks. The bond issue was, in effect, a measure in aid of property owners in the benefit district, by providing that part of the cost of the land could be paid out of the credit of the entire city rather than requiring all of it to be paid out of benefits assessed against their property, and was, no doubt, enacted because it was foreseen that the benefits to their property might not equal the cost of the property required for the improvement, so that the city would have to provide means to pay part of it. Why could not this be done by using the city's money to acquire the most expensive property to be taken? We hold that appellants cannot be heard to complain about it, since there is substantial evidence in the record to show that their properties have been benefited to the extent of their assessments and they have made no showing that the costs of acquiring even a 100-foot right of way for Market Street, would not be as much as the total benefits assessed in this proceeding. Neither do we think that the assessment of benefits can be held invalid, as appellants contend, because the city took deeds in fee for much of the property acquired in these two blocks. The record shows that the city paid, to these property owners, the amounts which the commissioners assessed as damages in the condemnation proceeding. If the city got more for its money, by getting conveyances in fee for the same amounts it would have had to pay anyway for the damages assessed by the commissioners, we are not going to hold that property owners, whose property was not assessed for any more because the city got deeds, can complain about that.

 We agree with appellants' contention that the money, procured by the bond issue under authority of Proposition Two, was a trust fund which the city could use for no purpose other than that stated therein. [Thompson v. City of St. Louis (Mo.), 253 S. W. 969; Meyer v. Kansas City, 323 Mo. 200, 18 S. W. (2d) 900; Stephens v. Bragg City (Mo. App.), 27 S. W. (2d) 1063; Meyering v. Miller, 334 Mo. 672, 51 S. W. (2d) 65.] However, the city did not use it for any purpose except to acquire land in the two blocks specified. The condemnation suit having just been commenced at the time the bond issue ordinance was adopted, the city had no certain means of knowing how much it would cost to acquire these two blocks. As it turned out, the total cost of all of the land in these two blocks was less than the amount of the bond issue. Also, when the benefits were assessed, they were sufficient to pay part of the cost of the land in these two blocks. The ordinance providing for the issuance of the bonds, apparently with such possibilities in view, provided that any excess funds obtained by the bonds should be placed in the general

250

sinking fund of the city to retire its bonds and of course it is the duty of the city to do that.

 Neither can appellants be sustained in their contention that the assessments against their properties are invalid because no assessment was made against the property in the eight blocks taken for the Memorial Plaza and Municipal Auditorium. While it is true that these blocks were all private property, when the suit to condemn property for widening Market Street was commenced, the bond issue, to provide funds for the city to acquire them for these purposes, was carried at the election held February 9, 1923. The ordinance to condemn this property for these purposes became effective August 9, 1924, and suit was commenced for condemnation thereof, January 24, 1925. The commissioners' report in the Memorial Plaza case was filed July 27, 1928. Prior to that time, the city had with the bond money paid for and acquired a considerable part of this property. The commissioners' report in this case was filed November 20, 1928, and judgment approving the commissioners' report in this case was not entered until May 17, 1932. So far as the record shows practically all of the plaza property had been acquired by that time and the city had paid into court the damages awarded for the rest. The city, therefore, obtained this property for public purposes before the final judgment in this case.

Section 4, Article XXI of the St. Louis Charter provides: "For the payment of all such damages the commissioners shall assess against all the lots or parcels of property or interests therein especially benefited by the proposed public work or improvement, separately, and in the name of the several owners thereof, the amount that each such lot or parcel of property or interest therein so assessed shall be especially benefited by the proposed public work or improvement, and against the city the balance of the damages over and above the aforesaid special benefits assessed." The charter, therefore, authorizes the assessment, against each parcel of property, of the amount that it is especially benefited by the improvement. If private property is not benefited enough to pay the damages the city must pay the balance. The court found, upon what we find to be substantial evidence, that appellants' properties were especially benefited to the amounts respectively assessed against them. How can an assessment upon property be confiscatory, if it is not greater than the actual benefit it received from the improvement? The charter provides a method other than assessing benefits against property owned by the city, for assessing costs of the improvement against the city, namely, by assessing against the city the balance of the damages over and above the special benefits to all lots or parcels of private property. "Public property belonging to a county, city or school district will not be held liable to special assessments for public improvements unless it is made so

by express enactment or clear implication.'' [State ex rel. Kansas City v. School District of Kansas City, 333 Mo. 288, 1. c. 299, 62 S. W. (2d) 813, and cases cited.] This court has held under similar provisions of the previous St. Louis charter that an assessment of benefits against property owned by the city, when the condemnation proceeding was commenced, was not authorized. [City of St. Louis v. Brown, 155 Mo. 545, 1. c. 561, 56 S. W. 298, 1. c. 301.] Since the St. Louis charter provides such a method of assessing, against the city, the amount that damages are in excess of benefits to private property, whether it has property in the benefit district or not, we hold that the same rule applies to property acquired or condemned by the city, for a public use, before a final assessment of benefits to private property has been made in a condemnation suit pending at the time it was so acquired by the city. [See Mullen Benevolent Corporation v. United States, 54 Sup. Ct. 38, 290 U. S. 89, 78 L. Ed. 192.] If the city acquires during such proceedings, benefits which might have been assessed against the property could still be assessed against the city, if benefits to other private property are not enough to pay the damages. If total benefits are less than damages, property owners'. rights are not violated because part of the damages are not assessed against the city. Since there is no showing that appellants' properties have been assessed for benefits in an amount greater than the special benefit which, according to substantial evidence in the case, they actually received from the Market Street project, there is no basis for this court to hold that the assessments against them are arbitrary, unjust or discriminatory.

Appellants further complain that the commissioners' report shows upon its face that the commissioners did not assess damages and benefits, as of the date the condemnation ordinance became effective, as required by Section 5, Article XXI of the City charter, because their report recites that they were assessed ''as of the date when said *ordinances* became effective.'' It is, however, clearly shown by the record that there was substantial evidence to uphold the benefits assessed, considering the effect of the improvement upon the value of the property in the condition it was upon the effective date of the original condemnation ordinance. It is apparent that the recital in the commissioners' report is merely intended to refer to the fact that the original ordinance was amended by a later ordinance. In fact, appellants in the other case, City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S. W. (2d) 133, complained because the assessment was made as of the effective date of the original ordinance, which they contend was too early a date under the provisions of the Constitution of this State. While assessments of benefits are required by the charter to be made as of the effective date of the ordinance, they are based upon a future effect of the improvement,

namely, the effect of the completed improvement to increase the market value of the property as it existed at the effective date of the ordinance providing therefor. The reason for making the effective date of the ordinance the time for assessing both benefits and damages is that a proposal to make an improvement often has an immediate effect toward increasing property values. A later date than the effective date of the authority to commence proceedings for condemnation would usually, therefore, be to the advantage of property owners whether they are to be awarded damages or assessed for benefits, and, because damages would thus be increased and benefits. deceased, this would be disadvantageous to the general public which has to pay the excess of damages over benefits.

Appellants were assessed benefits as follows: Checotah Real Estate & Development Company, $1600; Rebecca P. Dusenberry et al., $4486; Frederick D. Hampson et al., $1139; National Lead Company, $7318; National Veneer Package Company, $2926. Appellants say that these assessments were based upon an arbitrary basis because they are almost without exception the same per cent less than the amount of benefits testified to by the city's witnesses, and because their testimony shows that it was founded upon a more thorough analysis of facts. We stated the rules governing appellate review concerning similar contentions in the other case. What we said there applies here since we find the testimony produced by the city to be substantial evidence tending to show that the commissioners' report as to these benefits was correct. We find no prejudicial error in these proceedings for assessment of benefits.

The judgment is affirmed. *Coles, J.,* not sitting.