RUDDY, P. J., and ANDERSON, J., concur.

Floyd C. ANDERSON et al. (Plaintiffs), Appellants,

v.

Earl W. DEERING, Refuse Commissioner of the City of St. Louis et al. (Defendants), Respondents.

No. 30028.

St. Louis Court of Appeals. Missouri.

Dec. 2, 1958.

Rosenblum & Goldenhersh, Norman S. London, St. Louis, for appellants.

Charles J. Dolan, Acting City Counselor, Alvin J. McFarland, Associate City Counselor, David S. Hemenway, Asst. City Counselor, St. Louis, for respondents.

RUDDY, Presiding Judge.

This is an action by plaintiffs who are employees of the Refuse Collection Division of the City of St. Louis against the City of St. Louis, a municipal corporation, and certain of its officers. Among the officers shown as defendants are the members of the Civil Service Commission of the City of St. Louis and Earl W. Deering as Refuse Commissioner of said City. The action is for a declaratory judgment and a review of the findings of the Civil Service Commission. From an adverse decree and judgment plaintiffs appealed.

This action involves a construction of Sections 15 and 16 of Ordinance 47555 of the City of St. Louis in force during the period of June 28, 1955, to June 26, 1956, and at the time the work was done which forms the basis of this action. The pertinent parts of the two sections of the Ordinance are as follows:

"Section 15. Each appointing authority shall submit to the Department of Personnel a schedule of normal working hours in the average required weekly hours of service in an employment cycle for each class of position in the agency under his supervision or its organizational units, which, when so submitted shall constitute the maximum number of weekly hours of work and all hours worked by employees paid on a bi-weekly basis in excess thereof shall be considered over time. * * * The program of work in each department or organizational unit shall be so arranged, so as to reduce to a minimum the necessity for overtime work by employees paid on a bi-weekly basis. * * * Recorded overtime shall normally be compensated for by allowing compensatory time off but where in the judgment of the appointing authority the allowance of compensatory time off would interfere with the work under his supervision the appointing authority may pay for such recorded overtime. * * *

"Section 16. Classified employees, other than those paid on a weekly, daily or hourly basis shall be entitled to eight (8) hours leave with pay or eight (8) hours compensatory time off in lieu thereof on the following days:" (Hereafter follows a list of holidays throughout the year.)

Among the allegations in the petition of plaintiffs is the following: "Each and every one of the plaintiffs herein has upon occasion worked in excess of forty hours per week at his particular job as an employee of the Refuse Division of the City of St. Louis, or has become entitled to work credit in excess of forty hours by means of a holiday provided in Section 16 of Ordinance No. 47555, and each plaintiff herein did during the week of September 5, 1955 to September 11, 1955 work in excess of forty hours, part of said forty hours being comprised of eight hours credit to be allowed for Labor Day as provided in Section 16 of Ordinance No. 47555, and said plaintiffs in addition have in other weeks worked in excess of forty hours or become entitled to more than forty hours of work credit." It was stipulated and agreed by the parties that the above allegation was true.

It was further stipulated and agreed by the parties that "upon occasion each and every plaintiff herein has been required to work less than forty hours per week at his particular job for which his weekly or bi-weekly rate of pay has not been reduced but in fact has been paid at his regular bi-weekly rate, notwithstanding he has worked less than forty hours per week so long as he has worked all hours per week actually required of him by the Commissioner of Refuse."

Each of the plaintiffs was paid on a bi-weekly basis and each occupied positions in the classified service of the City of St. Louis. Defendant Earl W. Deering was the appointing authority of the Refuse Division of the City of St. Louis within the meaning of Section 15 of Ordinance No. 47555. Deering as the appointing authority submitted to the Department of Personnel "a schedule of normal working hours in the average required weekly hours of service" for the plaintiffs herein as required by the Ordinance and the schedule stated that the "normal working hours" for the plaintiffs was forty hours per week.

Defendant Deering, as the appointing authority, in the schedule submitted to the Department of Personnel, determined that the "employment cycle" for the plaintiffs shall be one year, commencing on the date of employment of each plaintiff and terminating on the day preceding each anniversary of said date of employment. It was determined by Deering that each plaintiff shall work a minimum of 2080 hours during each employment cycle with compensatory pay or compensatory time off computed only at the end of an employment cycle. The compensatory pay or compensatory time off was to be granted to any of the plaintiffs only in the event such plaintiff worked in excess of 2080 hours during the employment cycle after giving due credit to each plaintiff for vacation leave, sick leave and holidays. Each of the plaintiffs was given eight hours credit for the holidays specified in Section 16 of the Ordinance only at the end of the employment cycle. The schedule was approved by the Director of Personnel.

Deering, after a request made by the plaintiffs for overtime on a weekly basis, refused to grant compensatory pay or compensatory time off for work in excess of 40 hours in any given week and ruled that plaintiffs shall receive overtime pay or time off only if they shall work in excess of 2080 hours (52 weeks at 40 hours per week) per year and that holiday credit shall be granted only at the end of the year in determining whether the above requirement had been met.

The Civil Service Commission of the City of St. Louis, after a hearing, upheld the ruling of the appointing authority. The Circuit Court sustained the holding of the Civil Service Commission and found the finding of the Civil Service Commission in accord with the Ordinances of the City of St. Louis.

Plaintiffs contend Ordinance No. 47555 provides that they are entitled to either compensatory time off or compensatory pay for all time in excess of 40 hours *in any given week* which they have worked after being granted credit of 8 hours in any week containing any one of the holidays specified in Section 16 of said Ordinance. In other words they are asking that overtime pay be computed on a weekly basis. They say nothing about reduction in their pay for weeks when they work less than 40 hours. Defendants contend that compensatory time off or compensatory pay for time in excess of 40 hours should not be computed on a weekly basis as requested by plaintiffs but should be computed only on an annual basis.

The principal argument offered by plaintiffs in support of their position is that the holding of the appointing authority could result in working an employee any number of hours in excess of 40 hours per week and the employee would not be entitled to overtime pay or compensatory time off. They say it would be within the realm of "mathematical possibility" that a man could be required to work a week of 7 days of 24 hours a day for a total of 168 hours and yet not be entitled to any overtime pay or time off. There is nothing in the record showing that plaintiffs were required at any time to work an excessive number of hours.

Deering testified before the Civil Service Commission that over a period of a year the men average 40 hours per week and that he recognized the refuse collectors could not work 12 hours per day because of lack of daylight and other circumstances not permitting work.

In connection with the example posed by plaintiffs they say that the law favors constructions of ordinances which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable or confiscatory results or oppression. Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832. They also contend that ordinances shall be construed so as to ascertain their rational meaning. City of St. Louis v. Senter Commission Co., 337 Mo. 238, 85 S.W.2d 21.

Deering in his testimony before the Civil Service Commission said that because of the type of positions within his department calling for different kinds of work employment cycles vary according to the nature of the work required. He further testified that the amount of "rubbish" to be collected varied from week to week and from season to season. His testimony showed that because of this variance in the amount of rubbish to be collected from week to week and from season to season the employment cycle could not be on a weekly basis. As we have pointed out it was his judgment as the appointing authority that the employment cycle be on an annual basis.

■ We do not agree with plaintiffs that the ruling of Deering, which ruling was affirmed by the Civil Service Commission and the Circuit Court, is unreasonable, nor is it opposed to the rational meaning of the ordinance. Rather, it is consonant with its meaning.

We agree with the contention of defendants that if the employment cycle is to be defined as weekly and the overtime be paid or be compensated for by time off on a weekly basis, it then becomes obvious there was no reason for the use of the words "average" or "employment cycle" in Section 15 of the Ordinance under review.

It is clear from a reading of the Ordinance that it is the duty of the appointing authority when submitting to the Department of Personnel a schedule of the "average required weekly hours of service" to establish an "employment cycle." This he did by establishing 2080 hours of work service (to be reduced through credits for holidays pursuant to Section 16) before overtime was payable. The reasonableness of establishing the "employment cycle" on an annual basis becomes evident when the nature and the amount of work required is subject to variance in the amount of rubbish to be collected from time to time and the other circumstances testified to by Deering. As pointed out by defendants in the instances when the work-load is constant one week may be the employment cycle but it is otherwise when the work-load varies for various reasons.

■ When construing an ordinance enacted by a municipal legislative body it is our duty to ascertain the intent of that body, and to do so, if possible, from the language used. Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122.

■ It has been frequently said in the cases that it is a cardinal rule of construction that every word, clause, sentence and section of an ordinance or statute must be given some meaning unless it is in conflict with the legislative intent. For two such cases see State ex rel. McKittrick, Atty. Gen., v. Carolene Products Co., 346 Mo. 1049, 144 S.W.2d 153, and State v. Wipke, 345 Mo. 283, 133 S.W.2d 354.

The plain intent of the legislative body which enacted Ordinance No. 47555, insofar as overtime pay is concerned, can be found in that part of the Ordinance wherein the legislative body said: "The program of work in each department or organizational unit shall be so arranged, so as to reduce to a minimum the necessity for overtime work by employees paid on a bi-weekly basis." This clearly shows that it was the intention of the legislative authority to give to the appointing authority the right to establish an employment cycle that would serve to reduce to a minimum the necessity for overtime work and pay to employees paid on a bi-weekly basis.

The "average required weekly hours of service" must be determined by dividing the number of hours in the employment cycle by the number of weeks in that cycle. The figure obtained determines the number of "normal working hours" in the "average" week. Webster's New International Dictionary, Second Edition, Unabridged, defines "average" as: "4. A mean value, medial sum or quantity, made out of unequal sums or quantities; an arithmetical mean." The same dictionary defines "mean" as· "1. Occupying a middle position; occurring between the limits or extremes; intermediate; * * *"

Applying the above definitions, as we should if we are to give every word some meaning, we find that the average weekly hours will be some place between two extremes. It will fall some place between the weeks comprising the least hours of work and the weeks comprising the most hours of work. The use of this term in the Ordinance shows that the legislative body contemplated hours of work in some weeks in excess of the normal working hours and in some weeks under the normal working hours. Webster's New International Dictionary, supra, defines "cycle" as: "1. One of the intervals or spaces of time in which one course or round of a certain regularly and continually recurring succession of events or phenomena is contemplated." The space of time comprising the "employment cycle" as established by Deering was 2080 work hours annually (subject to the provisions of Section 16 of the Ordinance) before overtime was payable. Deering had the duty and the authority to establish an employment cycle and we think his interpretation that overtime was payable only at the end of the employment cycle follows the legislative intent, which was to reduce to a minimum the necessity of overtime work and pay to employees paid on a bi-weekly basis. Also, any other interpretation would render meaningless the use of the term "employment cycle" as found in the Ordinance.

The effect of the Ordinance is to pay the employee for the hours he actually works in an employment cycle. At the same time the employee is guaranteed a certain amount bi-weekly. This amount is paid even though the employee works less than 40 hours in any given week.

We rule that the findings of the Civil Service Commission of the City of St. Louis affirmed by the Circuit Court were in accordance with the terms of Ordinance No. 47555.

The findings and judgment of the Circuit Court should be affirmed. It is so ordered.

ANDERSON and WOLFE, JJ., concur.