In the Matter of the FORECLOSURE OF LIENS FOR DELINQUENT LAND TAXES BY ACTION IN REM, Director of Collections for Jackson County, City of Kansas City, Missouri, Appellant–Respondent,

v.

The HOUSING AUTHORITY OF KANSAS CITY, MISSOURI, Respondent–Appellant.

Nos. WD 61657, WD 63227.

Missouri Court of Appeals, Western District.

Dec. 14, 2004.

Nicole Janece Rowlette, Kansas City, for Appellant.

Kevin R. Thomas, Kansas City, for Respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

This case involves a land-tax dispute between the Housing Authority of Kansas City and the City of Kansas City. The City, pursuant to its charter, enacted an assessment on all real property abutting various boulevards and streets maintained and supervised by the Board of Park Commissioners. The City filed two separate suits seeking to collect unpaid assessments on seventeen properties owned by the Housing Authority. The City appeals from summary judgment entered in favor of the Authority in the first suit, while the Authority appeals from the judgment entered in the City's favor in the second suit. We affirm the grant of summary judgment in the first suit and reverse the judgment in the second suit.

### Factual Background

The Missouri statutes grant cities the authority to issue special assessments. Section 88.812 authorizes third and fourth class cities and cities with constitutional charters to issue assessments to pay for certain improvements—*e.g.*, "for construct-

ing and repairing sidewalks and sidewalk curbing, and for sewers, and for grading, paving, excavating, macadamizing, curbing and guttering of any street alley, square, or other highway[.]" The parties agree that the City, which has a constitutional charter, is an authorized city. The statute provides that the assessments "shall be levied and collected as a special tax." The statute states that this tax bill "shall be a lien against the . . . parcel of land described [therein]."

Section 88.812 sets forth terms and procedures for the issuance of assessments. The statute also affords constitutional charter cities discretion to adopt different procedures in its own charter regarding the assessments:

> Notwithstanding the provisions of this section, a constitutional charter city may provide for special assessments for constructing and repairing sidewalks and sidewalk curbing, and for sewers, and for grading, paving, excavating, macadamizing, curbing and guttering of any street, avenue, alley, square or other highway, or part thereof, and repairing the same upon such terms, conditions and procedures as are set forth in its own charter or ordinances.

The City exercised this discretion in section 62 of its charter, authorizing the city council to levy by annual ordinance a "special assessment," of no more than $1 per foot, on land abutting the boulevards, parkways, roads, and other highways under the control of the Board of Park Commissioners.

Each year during the period from 1997 to 2001, the council, by way of ordinances, levied special assessments of $1 per foot pursuant to its authority under the charter. The Housing Authority owns seventeen properties within areas subject to these ordinances. The Authority received special assessments each year. However, the Authority refused to pay the assessments. Subsequently, the two suits that are the subject of this appeal were filed.

## I. The First Suit

On May 31, 2000, the Director of Collections for Jackson County, on behalf of the City, filed a "Petition and List of Parcels of Land Encumbered with Delinquent Taxes" (Delinquent Land Tax Suit No. K–2000) in the Jackson County Circuit Court.[1] This action was filed under the Land Tax Collection Law, RSMo. Chapter 141. The Director alleged that the Housing Authority was delinquent in the payment of taxes on its parcels of land. The Director sought to foreclose on the alleged tax liens and sought a sale of all parcels not timely redeemed.

The trial court concluded that execution and sale of a property is the only remedy to collect for taxes and special assessments under section 141.240. It also determined that the Housing Authority properties are not subject to execution and sale under section 99.200. Accordingly, the court concluded that section 141.240 provides no mechanism for the City to collect assessments owed by the Authority and entered summary judgment for the Authority.

The City appeals.

### Analysis

In its first point on appeal, the City argues that the court erred in entering summary judgment for the Housing Authority.

All the facts pertinent to the issues addressed herein are undisputed. Because the propriety of summary judgment is a

---

1. Jackson County, pursuant to an agreement with the City, files an annual petition, which includes delinquent City land taxes and special assessments.

question of law, our review is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record and all reasonable inferences therefrom in the light most favorable to the non-movant. *Bost v. Clark*, 116 S.W.3d 667, 672 (Mo.App.2003). In evaluating a grant of summary judgment, we use the same criteria employed by the ruling court. *Welch v. Davis*, 114 S.W.3d 285, 292 (Mo.App. 2003). Summary judgment is appropriate where the movant shows that he is entitled to judgment as a matter of law and no genuine issues of material fact exist. Rule 74.04(c)(6).

■ The City filed its first suit against the Housing Authority under the Land Tax Collection Law, RSMo. Chapter 141. The primary purpose of the law is to provide a convenient and efficient method for collecting longstanding tax delinquencies on real estate. *Buchanan v. Cabiness*, 240 Mo.App. 829, 221 S.W.2d 849, 852 (1949). The method it prescribes is foreclosure. *See* Section 141.260.

## The Housing Authorities Law Protects The Housing Authority from Both Lien and Execution

■ The Housing Authorities Law, RSMo Chapter 99, authorizes the creation of a housing authority in each city and each county of Missouri. Section 99.040. A housing authority is a municipal corporation that has as its purpose the re-development of areas that contain unsanitary or unsafe housing conditions for the benefit of persons of low income. Sections 99.030 and 99.080. Any real property owned by a housing authority is exempt from foreclosure or any other judicial process, except for liens that the housing authority has itself voluntarily created:

All real property of an authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall judgment against an authority be a charge or lien upon its real property; provided, however, that the provisions of this section shall not apply to or limit the right of obligees to foreclose or otherwise enforce any mortgage of an authority or the right of obligees to pursue any remedies for the enforcement of any pledge or lien given by an authority on its rents, fees, or revenues.

Section 99.200.

In light of this exemption, the trial court concluded that the City could not levy and sell the Housing Authority properties at issue through a judgment execution pursuant to Chapter 141. Because such execution is the only remedy available under that chapter, the court granted summary judgment for the Housing Authority.

■ The City concedes that section 99.200 prohibits it from foreclosing upon the Housing Authority's property. Nevertheless, the City argues that it has a lien that remains with the property. The City contends that "should the ownership ever change on these properties, [it] could then execute on these liens." According to the City, it is still entitled to judgment, and the execution of that judgment should be stayed until the change in ownership takes place.

The remedy available under Chapter 141—foreclosure—does not apply to property owned by a housing authority because section 99.200 flatly exempts such property from foreclosure except for any liens voluntarily created by the housing authority. The City fails to show any other remedy available under Chapter 141 that allows it to collect assessments from the Authority. The plain language of section 99.200 also contradicts the City's contention that it is entitled to some sort of lien on the proper-

ty. The statute provides that a "judgment against an authority [shall not] be a charge or lien upon its real property." That language is plain and unambiguous in the context of the statutory purpose. The obvious purpose is to exempt housing authorities from collection remedies (for all liens except voluntary liens) affecting the property in any way.

Point denied.

In its second point, the City contends that the trial court erred in failing to decide whether the boulevard assessment is a tax or an assessment. The court declined to address this issue, granting summary judgment on the basis discussed in Point I above. In view of our ruling that the trial court did not err in granting summary judgment on this basis, Point II is moot.

The Housing Authority was entitled to judgment as a matter of law in the first suit. Thus, the trial court did not err in entering summary judgment in its favor.

## II. The Second Suit

On January 10, 2002, after the Director of Collections had filed the first suit but before the court had entered summary judgment for the Housing Authority in that case, the City filed a "Petition for Recovery of Personal Debt" with the Jackson County Circuit Court. The City sought to recover the unpaid assessments on seventeen Housing Authority properties, alleging that the Housing Authority was "personally liable" for a total of $18,427.42 plus a 10% late payment penalty.

The Housing Authority filed a summary judgment motion, alleging, *inter alia,* that section 319 of the City's charter—which purports to authorize a personal judgment against various entities for unpaid assessments—is unconstitutional to the extent that it purports to create liability for a public corporation. The trial court denied the motion.

Section 319 states, in pertinent part, as follows:

Whenever any land liable to be assessed with special benefits to pay for any public improvement mentioned in this charter shall be owned by a railroad corporation, cemetery association, school district, or any other public or quasi-public corporation, or by any other corporation, association, society or person as trustee, such land shall be assessed and a special tax bill issued to evidence the same in the same manner as though the same were the property of a private person; and if a sale of such land to enforce such assessment is contrary to the public policy or the laws of this state then the amount of such assessment, as may be evidenced by the special tax bill, shall be paid by such railroad corporation, cemetery association, school district, county or other public or quasi-public corporation, or by such association, society or person as trustee. Suits shall be instituted to enforce the collection of any such special tax bills in the same manner and in the same courts as on other special tax bills, and the judgment in any such suit, if for the plaintiff, shall be a personal one against the owner of the land as assessed, for the amount due on such tax bill; . . . .

Relying on section 88.812 of the Missouri statutes and the City's charter, the trial court concluded that the City was authorized to include the properties owned by the Housing Authority in the special assessments for boulevard maintenance. The court also concluded that section 319 of the City's charter provided the remedy of an *in personam* judgment against the Authority as opposed to an *in rem* remedy

against the property itself. Accordingly, the court entered judgment in favor of the City for the assessments, interest, and collection costs[2] in the amount of $29,225.06. The Housing Authority appeals.

## Analysis

We take up the points out of order beginning with Point II.

■ In its second point on appeal, the Housing Authority contends that the trial court erred in entering a money judgment for the City. According to the Authority, the City had no authority to levy boulevard assessments on Authority property. This presents an issue of law. Our review is *de novo*. *Baldwin v. Dir. of Revenue*, 38 S.W.3d 401, 405 (Mo. banc 2001).

■ The Missouri Constitution exempts state property from taxes. *See* Art. X, Section 6; *see also* Section 137.100. Because housing authorities are political subdivisions of the state, this exemption extends to the Housing Authority properties in this case. *Schmoll v. Housing Authority of St. Louis County*, 321 S.W.2d 494, 496 (Mo.1959). This exemption, however, applies only to real estate taxes for general purposes. *Tri–County Levee Dist. v. Mo. Highway & Transp. Comm'n*, 42 S.W.3d 779, 786 (Mo.App.2001). It does not apply to special assessments for local improvements. *Id.*

■■ Because there is no constitutional prohibition against the assessment of state property, the question of whether state property is subject to special assessments by a city is determined by legislative will. *City of Clinton*, 22 S.W. at 495. To exercise this will, the legislature must do so either through express terms or clear implication. *Id.; Senter*, 337 Mo. 238, 85 S.W.2d 21, 26 (1935). This man-

date stems from the general rule that statutes are not construed as a limit on state sovereignty unless the language clearly indicates such an intent. *Id.* "Language allowing assessment against properties generally is insufficient to impose liability on property owned by the state." *Tri–County Levee Dist.*, 42 S.W.3d at 787.

## Chapter 88 Does Not Authorize Assessments Against State Property

Although section 88.812 gives cities the power to levy special assessments for "constructing and repairing sidewalks and sidewalk curbing, and for sewers" and for "grading, paving, excavating, macadamizing, curbing and guttering" streets and other public works, the language is general as to who may be subject to assessments. "[L]anguage allowing assessment against properties generally" does not authorize assessment against state property. *See Tri–County Levee Dist.*, 42 S.W.3d at 787. The legislature must clearly express the intent to allow assessments against state property. *See, e.g., id.* at 787 (finding this intent where statute specifically contemplated that "all property owned by the state" would be included in the assessments). Here, the General Assembly in section 88.812 has not clearly expressed such an intent.

The City claims its authority under section 319 of the charter *is* derived from section 88.812 which grants the power for cities to levy assessments. The City says that section 88.812 *does* authorize charter cities to issue assessments against public property—indirectly and impliedly. The City claims that charter cities may go beyond the authority granted in section 88.812 to other cities because the statute

---

**2.** Section 390 of the City charter provides that in every suit for the collection of delinquent taxes, the City shall recover 10% of the delinquent bill as costs of the action.

says a charter city may provide for its own "terms and conditions, and procedures."

Reviewing that language in section 88.812 in context, we note that the statute, after authorizing assessments, sets forth some "terms, conditions and procedures" for assessments. It describes how plans and specifications shall be prepared and filed. It provides the method and frequency of publication of notice to interested parties in both a daily and a weekly newspaper. It provides for a public hearing on the proposed assessments. The statute further specifies the maximum interest rate on the tax bills. Finally, it also specifies the duration of liens. Following discussion of those "terms, conditions, and procedures" applicable to other cities, the statute then gives constitutional charter cities discretion to set forth, within their charters, their own "terms, conditions, and procedures" for assessing properties.

■ The City argues that the language about the city's discretion to set its own "terms, conditions, and procedures" permits the City to go beyond the express authority granted in section 88.812 to provide (in its charter) for the assessment of property owned by the State or any of its agencies. We disagree. We believe it is obvious, in the statutory context, that the City's authority is only to separately adopt its own *"terms, conditions,* and *procedures."* We are familiar with the meaning of the words "terms, conditions and procedures." While those words might be understood to allow a *method* of collection, such as, perhaps, allowing the collection of legitimately imposed assessments by means of a personal judgment, the words cannot reasonably be expanded to substantively grant to the City the right to assess *state property* and collect the assessments as a personal liability. For the legislature to express the will to allow state property to be taxed, the legislature must do so

through express terms or *clear implication. City of Clinton,* 22 S.W. at 495. The will to allow assessments against state property is not made express. We hold it also is not clearly implied by the language allowing charter cities to adopt "terms, conditions, and procedures."

Article VI, section 19(a) of the state constitution describes the powers of charter cities:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

■ This is a broad grant of authority. However, a city charter may not, as we have seen, exercise powers that are limited or denied by statute. Mo. CONST. art. VI, Section 19(a). Where such a conflict exists, the charter provision is void. *City of Springfield v. Goff,* 918 S.W.2d 786, 789 (Mo. banc 1996). The General Assembly did not provide a means of enforcing any judgment against state property for assessments. It appears that this is because the General Assembly never intended that section 88.812 authorize assessments as to such property. *See id.; see also Thogmartin v. Nevada Sch. Dist.,* 189 Mo.App. 10, 176 S.W. 473, 474 (1915). Accordingly, to the extent that section 319 of the City charter permits assessment of state property, it is void. Because there is no authority for an assessment as to the Authority's property, there is no authority for a personal judgment against the Authority. The judgment entered in favor of the City in WD 63227 is reversed.

The Authority's third point, which also relates to the judgment entered in favor of the City, is moot in light of our analysis of Point II.[3]

## Conclusion

For the foregoing reasons, we affirm the summary judgment in the first suit (Case No. WD 61657) and reverse the judgment in the second suit (Case No. WD 63227).

ELLIS and HARDWICK, JJ., concur.

---

**3.** Point I challenges the court's denial of summary judgment on this basis. This point is not an appealable point of error because such a denial is not a final judgment. *See Betts–Lucas v. Hanson,* 31 S.W.3d 484, 485 (Mo. App.2000). This rule applies even when an appeal is taken from a final judgment, as it has been here. *State ex. rel. Mo. Div. of Transp. v. Sure–Way Transp. Inc.,* 884 S.W.2d 349, 351 (Mo.App.1994). The Housing Authority's second and third points are directed to that judgment. However, the rule does not preclude our review of the underlying merits of the summary judgment motion—*e.g.,* whether the charter provision conflicts with a state statute and is void. This is because this conclusion is compelled by our analysis of Point II, which is an appealable point of error.