FILED 62
Honorable James I. Spainhower State Treasurer Room 229, State Capitol Building Jefferson City, Missouri 65101
Dear Mr. Spainhower:
This is in response to your request for an opinion on the following questions:
 "1. Does Missouri law impose upon the State Treasurer the responsibility or authority to look beyond the face of revenue transmittals to determine to what fund they properly should be credited?
 "2. If such responsibility or authority is imposed upon the State Treasurer, what should he do if a state agency has erroneously designated the fund in which the revenues belong?
 "3. If such responsibility or authority is not imposed upon the State Treasurer, what should he do if he has reason to believe that the state agency has erroneously designated the fund in which the revenues should be placed?"
Based on information you have furnished this office, the State Treasurer regularly receives "revenue transmittal" forms that are filled out in the first instance by a state official who has received funds. The official describes on the form the source and amount of the receipt and designates the account in which it should be placed. The form is then transmitted to the Director of Revenue, who in turn transmits it to the Treasurer, indicating that the sum has been deposited in an authorized state depository to the account of the Treasurer of Missouri.
Your first question is whether Missouri law imposes upon the State Treasurer the responsibility or authority to look beyond the face of these revenue transmittals to determine in what fund the monies properly should be placed. Stated in another manner, you ask whether the Treasurer must credit such monies to the account designated by the state official or whether he has a duty to determine whether the state official has in fact designated the proper account.
Article IV, Section 15 of the Missouri Constitution describes the duties of the State Treasurer, in pertinent part, as follows:
 "The state treasurer shall be custodian of all state funds. All revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury, and all interest, income and returns therefrom shall belong to the state. Immediately on receipt thereof the state treasurer shall deposit all moneys in the state treasury to the credit of the state in banking institutions selected by him and approved by the governor and state auditor, and he shall hold them for the benefit of the respective funds to which they belong and disburse them as provided by law. . . . No duty shall be imposed on the state treasurer by law which is not related to the receipt, investment, custody and disbursement of state funds." (Emphasis supplied).
The Treasurer's responsibilities are further described in Section30.240, RSMo 1969, which provides in part as follows:
 "The state treasurer shall hold all state moneys, all deposits thereof, time as well as demand, and all obligations of the United States government in which such moneys are placed for the benefit of the respective funds to which they belong and disburse the same as authorized by law. . . ."
We have located no Missouri judicial authority dealing directly with your question. However, it is a cardinal rule of construction that every word, clause, or sentence of an enactment be given some meaning unless it is in conflict with legislative intent. Andersonv. Deering, 318 S.W.2d 383 (St.L. Ct.App. 1958). If possible, therefore, we must give meaning to the language of the foregoing constitutional and statutory provisions, which requires the Treasurer to hold or place state monies "for the benefit of the respective funds to which they belong." This language suggests that the Treasurer has some responsibility to hold or place such monies in the "proper" or "correct" fund.
We note, however, that Section 33.080, RSMo 1969, provides as follows:
 "All fees, funds and moneys from whatsoever source received by any department, board, bureau, commission, institution, official or agency of the state government by virtue of any law or rule or regulation made in accordance with any law, shall, by the official authorized to receive same, . . . be placed in the state treasury to the credit of the particular purpose or fund for which collected, . . ."
This provision imposes upon those state officials authorized to receive monies a responsibility similar to that of the Treasurer, namely, to see to it that receipts are credited to the proper account. We assume that officials carry out this responsibility essentially by designating on the revenue transmittal form the account to which the receipts should be credited. That being the case, the question to resolve is the extent of the Treasurer's responsibility upon receipt of a revenue transmittal form that appears regular on its face. Stated in another manner, is the fund designated by the receiving official conclusive upon the Treasurer?
Although we have located no Missouri cases precisely in point, the Missouri Supreme Court considered a related issue in State exrel. Swift v. Treasurer of State of Missouri, 41 Mo. 590 (1867). In that case, a warrant was presented to the State Treasurer for a sum representing an aggregate of the salaries of several employees of the state penitentiary, but it was payable to the warden for disbursement. Because the Treasurer believed claims against the state treasury should be paid only to the party to whom they were due, that is, to the employees themselves, he refused to sign the warrant in the form submitted to him. A mandamus action was brought to compel the Treasurer to issue the check since the warrant was duly executed, drawn against the proper fund, and appeared on its face to be for payment to employees of the state whose salaries were payable out of the fund against which the warrant was drawn.
The court held that the documentation submitted to authorize payment of the claim was not conclusive upon the Treasurer absent any specific provision of the law to that effect. The court concluded by stating:
 "It is the province of the Treasurer to see that all warrants presented to him are drawn against the proper fund, and drawn in such manner as to make them, when paid, such vouchers as will show conclusively to whom and for what services the public moneys have been paid out by him. . . ." Id. at 593.
Accordingly, the court held the Treasurer had properly refused to issue the check.
Although this case concerned the Treasurer's responsibilities with respect only to expenditures of state monies, we see no reason why the same principle would not apply to receipts. It is our view, therefore, that a revenue transmittal form submitted to the Treasurer is not conclusive as to the fund to which the money should be credited. To assure that funds are placed in a proper account, the Treasurer may look beyond the face of revenue transmittals to determine whether the proper fund has been designated.
You next ask what the Treasurer should do if he determines a state agency has erroneously designated the fund to which monies should be credited. This question assumes that the State Treasurer has a means of making this determination. Generally, the only information submitted to the Treasurer is the revenue transmittal form on which the receiving official has described the source and amount of the receipt and has designated the fund in which it belongs. From our discussions with members of your staff, we understand that occasionally the description of the source of the receipts is inadequate to determine whether the transmitting official has designated the proper fund.
As a general rule, public officers possess not only those powers expressly granted by statute, but also such additional powers as are necessary for the due and efficient exercise of powers expressly granted. State on Inf. McKittrick v. Wymore, 132 S.W.2d 979,987-988 (Mo.Banc 1939). A statutory grant of power carries with it everything necessary to carry out the power and make it effectual and complete. Id. at 988; Hudgins v. Mooresville Consol.School Dist., 278 S.W. 769 (Mo. 1925); State ex rel. Wahl v. Speer,223 S.W. 655 (Mo.Banc 1920); Ex parte Sanford, 139 S.W. 376 (Mo.Banc 1911).
Applying these principles to your question, we conclude that the Treasurer has the implied power to do what is necessary to discharge his responsibility of seeing to it that monies are credited to the proper fund. Accordingly, in the case of an inadequate description of the source of receipts, we believe the Treasurer has the authority to request a more specific description or additional documentation that will enable him to determine whether the proper fund has been designated.
In the event the Treasurer determines that a state official has designated the wrong fund in which monies should be placed, the course to pursue will depend upon so many variables that it is impossible to determine without consideration of the particular facts involved. Your staff has advised us that recently when it has been determined that a state agency has not designated the proper fund, you have requested the agency to circulate a supplemental transmittal form debiting the initial, erroneous account and crediting the proper account. We find no basis for objecting to this procedure. However, a situation may arise in the future in which the transmitting agency, believing its initial designation to be correct, would be unwilling to make the change requested by the Treasurer. Because such a situation could result in litigation, we recommend that the Treasurer seek legal advice from the Attorney General as to the propriety of the fund designation. In view of our conclusion in response to your first and second questions, it is unnecessary to consider your third question.
CONCLUSION
Therefore, it is our opinion that the State Treasurer has the authority to look beyond the face of revenue transmittals to determine to what fund the monies should be credited. If the Treasurer determines that a state agency has not designated the proper fund, he may request the agency to submit a corrective revenue transmittal.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Karen M. Iverson.
Yours very truly,
 JOHN C. DANFORTH Attorney General