Barbara J. WALKER, Collector of
Revenue, Plaintiff/Appellant,

v.

MISSOURI DEPARTMENT OF
NATURAL RESOURCES,
Defendant/Respondent.

No. ED 77125.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 3, 2000.

Harold A. Ellis, St. Charles, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy P. Duggan, Asst. Atty. Gen., Jefferson City, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

The St. Charles County Collector of Revenue ("Collector") appeals the judgment declaring that the Missouri Department of Natural Resources ("MDNR") is not liable for maintenance taxes or assessments levied by the Hancock Bottoms Drainage District ("District"). We affirm.

The facts were established in the trial court by stipulation. District is a duly organized and incorporated drainage district established by St. Charles County pursuant to Chapter 243 RSMo 1994.[1] At the time District was formed, benefits were assessed against a railroad right-of-way then owned by the Missouri Kansas Texas Railroad Company ("MKT"). A ditch maintained by the district was adjacent to the right-of-way and protected it

---

1. All Missouri statutory references are to RSMo 1994 unless otherwise indicated.

from overflow. In 1988, MKT transferred its right-of-way to MDNR by quitclaim deed in accordance with the terms of an Interim Trail Use Agreement ("Agreement") entered into between MKT and MDNR pursuant to the National Trails System Act, 16 U.S.C. section 1241 et seq. ("Trails Act"). Thereafter, MDNR maintained and operated the former MKT property as part of the Katy Trail State Park. District continued to levy maintenance taxes against the land but MDNR refused to pay them. Collector then filed suit against MDNR and MKT to foreclose on the lien she claimed pursuant to section 243.370. MDNR answered and counterclaimed for a declaratory judgment that neither District nor Collector has any legal authority to assess, levy or collect maintenance taxes against the Katy Trail State Park or any other MDNR property and that its property is not subject to foreclosure. Collector later conceded that the property may not be subject to foreclosure and sought leave to amend the petition to seek a general judgment instead.

The trial court entered judgment in favor of MDNR. The trial court found that the legislature must expressly authorize District to assess maintenance charges against property owned and operated by the state as a public park and no such express authorization can be found in Chapter 243. The trial court further found that MDNR was not required by federal law to pay for the assessed benefits pursuant to the terms of the Agreement with MKT because MDNR is not required by state law to pay such assessments. Collector appeals.

Our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will sustain the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.*

■ Reduced to its essence, Collector's sole point on appeal urges that the property in question is a railroad right-of-way

and, as such, is subject to special assessment pursuant to section 243.320. Collector claims MDNR is therefore contractually obligated to pay the assessments pursuant to the terms of the Agreement with MKT and the Trails Act. We disagree.

■ Article 10, Section 6 of the Missouri Constitution provides that all property, real and personal, of the state shall be exempt from taxation. However, this provision has been construed to exempt state property from real estate taxes for general purposes but not from special assessments for local improvements. *City of Clinton v. Henry County*, 115 Mo. 557, 22 S.W. 494, 495 (1893). The question is one of delegated power, not exemption from taxation. *Id.* at 495. The legislature must exercise such delegation by express enactment or clear implication. *Id.* Language allowing assessment against properties generally is insufficient to impose liability on property owned by the state. *Id.; State ex rel. Kansas City v. School Dist. of Kansas City*, 333 Mo. 288, 62 S.W.2d 813, 817 (1933); *Thogmartin v. Nevada School Dist.*, 189 Mo.App. 10, 176 S.W. 473, 473 (K.C.App.1915).

The legislature's delegation of authority for District to make the assessments at issue in this case is found in section 243.320, which provides:

243.320. Public roads and railroads to pay benefits

When any ditch constructed under the provisions of this chapter drains, either in whole or in part, or benefits any public or corporate road or railroad, there shall be apportioned to the county, if a county or state or free turnpike road, or if a corporate road or railroad, to the company owning, operation or controlling the same, the same proportion of the cost of location and construction of the improvement in proportion to the benefits received as to private individuals.

We find nothing in this language which even remotely suggests that the legislature intended to permit assessments against the State of Missouri or any of its agencies. It permits assessments against the county for benefits to state roads but does not in any manner authorize assessments against the state.[2] This construction of section 243.320 is confirmed by the fact that the only remedy for nonpayment provided in Chapter 243 is foreclosure, which may not be applied against state property. *Mercer County Drainage Dist. v. Trail Creek Township*, 317 Mo. 933, 297 S.W. 1, 7 (1927). It has been held that the failure of the legislature to provide a remedy other than foreclosure is an indication that the legislature never intended to subject public property to assessment in the first place. *Normandy Consol. School Dist. v. Wellston Sewer Dist.*, 77 S.W.2d 477, 479 (Mo.App.1934).

■ Collector next argues that federal law and a provision of the Agreement require MDNR to pay the assessments at issue. Specifically, Collector cites the following language found in section 1247(d) of the Trails Act:

If a State ... is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consis-

tent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

Pursuant to this provision, paragraph 8 of the Agreement provides:

This agreement and any subsequent conveyance is made pursuant to Section 8(d) of the National Trails System Act 16 U.S.C. 1247(d) ... With respect to those portions of the premises for which possession has been delivered to MDNR, MDNR agrees to operate, assume legal liability for the use of, manage, maintain and control the premises in accordance with the laws of the State of Missouri and Provisions of the National Trail System Act and Regulations promulgated pursuant thereto.

We find nothing in the above-quoted language of the statute and the Agreement that requires MDNR to pay the assessments at issue. The statute only requires MDNR to agree to pay any and all taxes that "may" be levied or assessed against the property. As discussed above, section 243.320 does not authorize District to make assessments against property owned by MDNR and operated as a state park. Accordingly, District "may not," consistent with state law, make such assessments and MDNR has no obligation to pay assessments that may not lawfully be imposed. The quoted provision of the Agreement likewise conditions MDNR's assumption of liability "in accordance with the laws of the State of Missouri." Because the laws of Missouri do not grant District the authority to make assessments against land

---

2. Because section 243.320 does not authorize District to make assessments against MDNR's property regardless of its character or use, Collector's somewhat convoluted argument that, pursuant to section 1247(d) of the Trails Act, the land remains a railroad right-of-way, is moot. We note, however, that the phrase "such interim use [as a trail] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes" does not, as Collector urges, mean that the land remains a railroad right-of-way while devoted to the authorized interim use as a trail. Rath-

er, by such language, Congress declared that the possibility that the land could be re-devoted to railroad use in the future was sufficient to constitute non-abandonment of the use of the right-of-way for railroad purposes, thereby preventing reversion of the easements that might otherwise have occurred under state law. *See Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 8–9, 110 S.Ct. 914, 919–20, 108 L.Ed.2d 1 (1990). While devoted to its interim use as a public recreational trail, the Katy Trail is a state park, not a railroad right-of-way.

owned by MDNR and operated as a state park, the Agreement does not impose any obligation on MDNR to pay the disputed assessments.

Judgment affirmed.

GARY M. GAERTNER, P.J., Concurs.

GEORGE W. DRAPER, III, J., Concurs.