**In the Matter of TRI–COUNTY LEVEE DISTRICT.**

**Tri–County Levee District, Respondent,**

**v.**

**Missouri Highway and Transportation Commission, Appellant.**

**No. ED 77797.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 12, 2001.

Application to Transfer Denied
April 24, 2001.

Philip E. Morgan, Jr., Chesterfield, MO, for appellant.

Gray C. Stribling, Jr., David R. Human, Clayton, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

The Missouri Highway and Transportation Commission (MHTC), the Exceptor in the underlying action, appeals from the judgment entered in the Circuit Court of Montgomery County in favor of the Tri–County Levee District (Tri–County) on Tri–County's petition for readjustment of benefits for property owned by MHTC.

MHTC argues the trial court erred in (1) denying MHTC's motion to dismiss for failure to receive notice of the Commissioners' viewing and hearing to assess benefits to the property in Tri–County; (2) failing to dismiss Tri–County's petition because the proposed assessment against MHTC is an unconstitutional diversion of state road funds; (3) approving Tri–County's assessment against MHTC because the assessment constitutes a tax and there has been no referendum pursuant to the Hancock Amendment; (4) sustaining Tri–County's assessment against MHTC because it constitutes an unconstitutional tax against the state; (5) entering a ruling that prejudiced MHTC by preventing discovery and thus prevented MHTC from properly preparing its case for trial; (6) denying MHTC's request for a jury trial; and (7) approving Tri–County's assessment against MHTC because it is based upon evidence demonstrated to be incorrect, against the weight of the evidence, and the assessment is grossly excessive. We affirm.[1]

Tri–County is a duly constituted levee district of the State of Missouri which maintains a levee in Warren, Montgomery, and Gasconade Counties on the north bank of the Missouri River which was built in 1965. Tri–County filed a petition for Readjustment of Benefits. After publication of notice, service on persons recorded in the Assessor's Office, and a hearing, the petition was granted, and Commissioners were appointed to reassess the benefits conferred upon the owners of property within the levee district. The Commissioners filed their report assessing benefits to MHTC of $2,101,716. This assessment resulted in a present levy of $24,000 to $26,000 in levee taxes per year against MHTC. MHTC filed exceptions to the assessment of Tri–County benefits against its property located within the levee district alleging the assessment was excessive and requested a trial. At the trial, the Commissioners produced evidence used to calculate the benefits to MHTC based upon their estimate of decreased maintenance costs and increased physical efficiency afforded by Tri–County's levees. MHTC challenged the costs found by the Commissioners but offered no competing figures. The Circuit Court found the Commissioners' determination and assessment of benefits was reasonable, appropriate, and supported by substantial evidence in the record. This appeal follows.

■ In reviewing a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Webcon Group, Inc. v. S.M. Properties, L.P.,* 1 S.W.3d 538, 541 (Mo. App. E.D.1999); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01(c). In determining whether there is sufficient evidence to support the trial court's judgment, we review the evidence in the light most favorable to the judgment. *Webcon Group, Inc.,* 1 S.W.3d at 541. The trial court determines the credibility of witnesses and may believe or disbelieve all or a part of any witness's testimony. *Id.*

■ In its first point, MHTC argues the trial court erred in denying MHTC's motion to dismiss for failure to receive notice

---

1. This case came upon the heels of *In the Matter of: Fabius River Drainage District,* 35 S.W.3d 473 (Mo.App.E.D.2000). Many of the issues and points raised there are identical to the issues and points raised here, and we borrow liberally from that opinion. We note, however, that the *Fabius* case analyzed the statutes concerning drainage districts and our case involves the statutes concerning levee districts.

of the Commissioners' viewing and hearing. We disagree.

Chapter 245 of Missouri Revised Statutes provides the law for levee districts. Section 245.197, RSMo 1994, provides that the circuit clerk shall give notice of the filing and hearing of the petition for readjustment of benefits in the manner and for the time provided for in Section 245.020, RSMo 1994. Section 245.020, RSMo 1994, states that within fourteen days of the filing, notice by publication shall be made in the county in which the land and other property of the district are situate. In addition, notice shall be sent by mail or certified mail "to the names as listed on the county assessor's records of the owners of land or other individual or corporate franchise property in the district, including all public entities owning land within the district." Section 245.020, RSMo 1994.

MHTC argues Section 226.100, RSMo 1994, is controlling. Section 226.100 requires service on the secretary of MHTC when MHTC is being sued. It states, "[t]he commission may sue and be sued in its official name, and for the purpose of suit and other legal proceedings, service may be had on the secretary." Section 226.100, RSMo 1994. MHTC claims it did not receive proper notice of the hearing because notice was not sent directly to the Secretary of MHTC. We disagree, and we find notice was proper in this case.

Here, Tri–County filed its petition for readjustment. Notice was published in three county newspapers in which the property was located. Notice was also mailed to all names listed on the county assessors' records. Neither MHTC nor the Missouri Department of Transportation (MODOT), however, was listed on the assessors' records in any of the affected counties. Even though neither MHTC nor MODOT was listed on the assessors' records, Tri–County mailed notice to the MO-DOT district office of the district in which the property was located. MHTC is a branch of MODOT.

We find Tri–County followed all notice procedures required under the statute. Notice was published in the county newspapers and mailed to all names listed on the county assessors' records. Service on the Secretary of MHTC is not required because the language of the Section 226.100, RSMo 1994, states service *may be* had on the secretary. We find Tri–County followed the notice requirements in the statute concerning levee districts.

MHTC calls our attention to *Bruening Co. v. Liberty Landing Dist.*, 475 S.W.2d 125 (Mo.1972). In that case the court, in dealing with a levee district, stated, "[t]he necessity for notice in such case rests on statutory and not constitutional requirements." *Id.* at 125. The court found notice by publication was constitutionally sufficient, but also found that with respect to a person whose name and address are known or very easily ascertainable and whose protected interests are directly affected by the proceedings in question, notice by publication is not sufficient. *Id.* at 127.

Here, we note something more than publication was effected to notify landowners. As the statute requires, landowners whose names and addresses are in the assessors' records were notified. Furthermore, Tri–County attempted to notify MHTC by registered mail, which was beyond the requirements of the statute. Point denied.

In its second point, MHTC argues the trial court erred in failing to dismiss Tri–County's petition because the proposed assessment against MHTC is an unconstitutional diversion of state road funds.[2] We disagree.

Article IV, Sections 29 and 30 of the Missouri Constitution provide for the establishment of MHTC, for the creation of the state road fund, and for limitations on the expenditure of state road funds. Article IV, Section 30(b) provides in part:

For the purpose of constructing and maintaining an adequate system of connected state highways all state revenue derived from highway users as an incident to their use or right to use the highways of the state, including all state license fees and taxes upon motor vehicles, trailers and motor vehicle fuels and upon, with respect to, or on the privilege of the manufacture, receipt, storage, distribution, sale or use thereof ... shall be credited to the state road fund and stand appropriated without legislative action for the following purposes and no other.

Two of the enumerated purposes for which those funds shall be expended include maintaining the state system of highways and "such other purposes and contingencies relating and appertaining to the construction and maintenance of such highways." Mo. Const. Art. IV, Section 30(b), cl. 1, sub-cl. (1), (5). Section 226.220, RSMo 1994, the statute that creates and establishes state road funds, provides that those funds shall be used for "maintaining state highways in the systems specified in article IV, section 30(b) of the constitution." Section 226.220.2, RSMo 1994.

Section 245.120.1, RSMo 1994, however, provides that in assessing the benefits to land within the levee district, the commission shall assess

lands, public highways, railroad and other rights-of-way, railroad roadways and other property not traversed by such works and improvements as provided for in the plan for reclamation ... according to the increased physical efficiency and decreased maintenance cost by reason of the protection to be derived from the proposed works and improvements.

The primary rule of statutory interpretation requires the court to ascertain the legislative intent by considering the plain and ordinary meaning of the words in the statute. *McNally v. St. Louis County Police Dept.*, 17 S.W.3d 614, 616 (Mo.App. E.D.2000). Each word, clause, sentence, and section of a statute should be given meaning. *Hoffman v. Van Pak Corp.*, 16 S.W.3d 684, 689 (Mo. App. E.D.2000). Statutes are construed together and harmonized if possible. *Auto Alarm Supply Corp. v. Lou Fusz Motor Co.*, 986 S.W.2d 467, 469 (Mo.App. E.D. 1998). Considering the entire legislative scheme and the plain meaning of the language used, the court must attempt to harmonize each statutory enactment. *Farmers' Elec. Co-op., Inc. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 270 (Mo. banc 1998).

Though Section 226.220, RSMo 1994, does not specifically authorize state road funds to be used to pay levee district assessments, it does authorize those funds to be used to maintain state highways and for "other purposes and contingencies relating and appertaining to the construction and maintenance of such highways." Con-

---

**2.** In its reply brief, MHTC raises for the first time its contention that Art. IV, Section 30(b)(5) recognizes MHTC as the sole authority to allocate general revenue funds for highway purposes. Appellate courts are generally precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument. *Coyne v. Coyne*, 17 S.W.3d 904, 906 (Mo.App. E.D.2000). Because not raised properly in its opening brief, we do not address this new argument here.

struing this language with that of Section 245.120.1, RSMo 1994, which provides the method the Commissioners should use in making assessments against public highways, we find that the legislature must have intended for the "other purposes and contingencies" relating to the maintenance of state highways to include levee district assessments for benefits conferred. This construction is consistent with Article IV, Section 30(b) of the Missouri Constitution. Any other construction would nullify the language found in Section 245.120.1, RSMo 1994, and would require the legislature to have intended a useless act by instructing the Commissioners to assess the benefits conferred upon public highways. Point denied.

▌ In its third point, MHTC argues the trial court erred in approving Tri-County's assessment against MHTC because the assessment constitutes a tax and there has been no referendum. We disagree.

The Missouri Constitution, as modified by the Hancock Amendment, reads as follows:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted ... without the approval of the required majority of the qualified voters of that county or other political subdivision.

Mo. Const. Art. X, Section 22.

▌ Only total state revenues are subject to Hancock Amendment refunds. *Missouri Ass'n of Counties v. Wilson*, 3 S.W.3d 772, 773 (Mo. banc 1999); Mo. Const. Art. X, Sections 17–18. To qualify as total state revenues, (1) the funds must be received into the state treasury, and (2) the funds must be subject to appropriation.

*Id.* at 774. The Missouri Supreme Court has rejected the contention that all fees, whether user fees or tax-fees, are subject to the Hancock Amendment. *Mullenix St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 561 (Mo.App. E.D.1998). Rather, the Hancock Amendment applies only to revenue increases that are in fact tax increases, whether labeled as taxes, licenses, or fees. *Id.* Revenue increases which are in fact fees for services rendered in connection with specific services ordinarily are not taxes unless the object of the requirement is to raise revenue to be paid into the general fund of government. *Id.*

In *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d at 311, n. 10, the Missouri Supreme Court articulated five factors to be applied in determining whether a revenue increase by a local government is an increase in a "tax, license or fees" that requires voter approval under the Hancock Amendment:

1) When is the fee paid?—Fees subject to the Hancock Amendment are likely to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee.

2) Who pays the fee?—A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged.

3) Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?— Fees subject to the Hancock Amendment are less likely to be dependent

on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer.

4) Is the government providing a service or good?—If the government is providing a good or service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

5) Has the activity historically and exclusively been provided by the government?—If the government has historically and exclusively provided the good, service, permission or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically and exclusively provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

First we must decide when the fee is paid. The fees here are paid by a date certain each year. We do not find this conclusive, however, because the service and benefit of the levee district is an ongoing service that continues every year after the levee was built and every year it is maintained.

Second, we must determine who pays the fee. The fee is only charged to those within the district who receive the benefit of the levee.

Third, we look to see if the amount of the fee to be paid is affected by the level of goods or services provided to the fee payer. The amount of the fee is determined by the "increased physical efficiency" and the "decreased maintenance costs" of the property because of the levee. The amount of the fee is affected by the level of benefit the property receives because of the levee.

Fourth, we must decide whether the government is providing a service or good. Tri–County is providing the service of protection from flooding to the property owners in the levee district.

Finally, we look to determine whether the activity has been historically *and* exclusively provided by the government. MHTC states in its brief that both private and public entities have provided services similar to Tri–County's. This service has not then been *exclusively* provided by the government, and the charge is thus not subject to the Hancock Amendment.

After applying these criteria, it is evident the special assessments at issue are not a tax in violation of the Hancock Amendment. Here, Tri–County is providing a service to the property owners in the district and the amount of the assessments is determined by the benefit conferred on them.

Furthermore, Missouri courts have held that similar assessments are not "taxes" within the meaning used in the Missouri Constitution. See *State ex rel. Drainage Dist. No. 28 of New Madrid County v. Thompson*, 328 Mo. 728, 41 S.W.2d 941, 945 (1931) (holding that assessments levied by a drainage district to pay for local improvements are not taxes); *Zahner v. City of Perryville*, 813 S.W.2d 855, 859 (Mo. banc 1991) (holding that an assessment "for specific purposes and not intended to be paid into the general fund to defray general public needs or governmental expenditures is not a tax"); and *Egyptian Levee Co. v. Hardin*, 27 Mo. 495, 496

(Mo.1858) (holding that amounts raised to be expended on the property assessed are not taxes). Point denied.

■ In its fourth point, MHTC argues the trial court erred in sustaining Tri–County's assessment against MHTC because it constitutes an unconstitutional tax against the state. We disagree.

■ Article X, Section 6 of the Missouri Constitution provides that all property of the state, real and personal, shall be exempt from taxation. If the state is the property owner, there is a presumption that the property is exempt. Mo. Const. Art. X, Section 6. The Missouri Supreme Court has stated:

> The general doctrine is that tax exempt statutes should be strictly construed because taxes are imposed on the whole citizenry for the support of the government, and exemptions are discriminatory. ... But as to property owned by the State or any of its political subdivisions, the doctrine is reversed. There taxation is the exception and not the rule. This State in its Constitution expressly exempts its own property ....

*State ex rel. Cairo Bridge Commission v. Mitchell,* 352 Mo. 1136, 181 S.W.2d 496, 499 (1944). However, the exemption from taxation has been construed to exempt state property from real estate taxes for general purposes but not from special assessments for local improvements. *Walker v. Missouri Department of Natural Resources,* 28 S.W.3d 460 (Mo.App.E.D.2000). The question is one of delegated power, not exemption from taxation. *Id.* Accordingly, the legislature must exercise such delegation by express enactment or clear implication. *Id.* Language allowing assessment against properties generally is insufficient to impose liability on property owned by the state. *Id.*

Section 245.120.1, RSMo 1994, provides:

> The commissioners shall proceed to view the premises and determine the value of all land and other property, within or without the district .... They shall assess the amount of benefits, and the amount of damages, if any, that will accrue to each governmental lot, *including all property owned by the state ...* from carrying out and putting into effect the plan for reclamation heretofore adopted.

(Emphasis added.)

By its very language, Chapter 245 of the Missouri Revised Statutes anticipates that government land will be contained within the levee district and provides the manner in which the assessment should be determined. The assessment against lands owned by MHTC here is authorized by Section 245.120, RSMo 1994, and therefore does not violate the Missouri Constitution. Point denied.

■ In its fifth and sixth points, MHTC argues the trial court erred in entering a ruling that prejudiced MHTC by preventing discovery and thus, prevented MHTC from properly preparing its case for trial and in denying MHTC's request for a jury trial. We disagree.

Our Supreme Court has stated the provisions in Chapter 245 of the Missouri Revised Statutes are substantially the same as the statutory provisions of Chapter 242 of the Missouri Revised Statutes. *J.A. Bruening Co.,* 475 S.W.2d at 126. Our Supreme Court has also described Chapter 242 of the Missouri Revised Statutes as a code unto itself that fixes the rights and liabilities of all with respect to matters involved and grants and withholds power and authority, accordingly as it may be provided therein. *State ex rel. Powell v. Capps,* 381 S.W.2d 852, 856 (Mo.1964). Because of the similarities in the chapters, we will likewise treat Chapter 245 of the

Missouri Revised Statutes as a code unto itself.

The provision at issue, Section 245.130, RSMo 1994, provides that all exceptions shall be heard and determined in a summary manner in order to carry out liberally the purposes and needs of the district. The Missouri Supreme Court defined "summary manner" as "forthwith and without regard to the established course of legal proceeding" in *Birmingham Drainage District v. Chicago, B. & Q. R. Co.*, 274 Mo. 140, 202 S.W. 404, 408 (1917). As such, the term "summary manner" does not envisage the use of standard discovery mechanisms or jury trials. Therefore, the trial court was within its discretion in controlling discovery and in denying MHTC's request for a jury trial. Points denied.

■ In its final point, MHTC argues the trial court erred in approving Tri-County's assessment against MHTC because it is based upon evidence which has been demonstrated to be incorrect, is against the weight of the evidence, and the assessment grossly excessive. We disagree.

The Commissioners assessed the benefits based upon their estimate of increased physical efficiency and decreased maintenance costs afforded by Tri-County's levees. The Commissioners considered the replacement cost of Highway 94. They considered the average number of days per year the road would be closed in the absence of the levee. They also considered costs for the post-flood cleanup and decreased paving costs due to protection from flooding. They estimated the benefit to MHTC because of the levee was $2,101,716. Another expert in an independent study found a benefit of $2,547,393.

We find there was substantial evidence to support the trial court's determination that the Commissioners' Report assessing benefits has a rational basis and is not arbitrary, unreasonable, or capricious. Therefore, the trial court did not err in its judgment affirming the assessment of benefits in the Commissioners' Report. Point denied.

The Motion to Dismiss Appeal Pursuant to Section 245.130, arguing MHTC has no right to appeal, which was taken with this case, is denied. Judgment affirmed.

MARY RHODES RUSSELL and RICHARD B. TEITELMAN, JJ., concur.