# In the Iowa Supreme Court

No. 24–1701

Submitted December 17, 2025—Filed April 3, 2026

**State of Iowa ex rel. Iowa Department of Transportation,**

Appellee,

vs.

**Honey Creek Drainage District No. 6 Board of Trustees, Robert D. Hansen, Mason J. Hansen,** and **Richard J. Hansen** in their capacities as members of the Board of Trustees of **Honey Creek Drainage District No. 6, Pigeon Creek Drainage District No. 2 Subdrainage District No. 3 Board of Trustees, Michael P. Schropp, Dale D. Rief,** and **Frank J. Moran** in their capacities as members of the Board of Trustees of **Pigeon Creek Drainage District No. 2 Subdrainage District No. 3,** and **Board of Supervisors of Pottawattamie County** ex rel. **Honey Creek Drainage District No. 6** and **Pigeon Creek Drainage District No. 2 Subdrainage District No. 3,**

Appellants.

Appeal from the Iowa District Court for Pottawattamie County, Justin R. Wyatt, judge.

Two drainage districts appeal a district court order setting aside a reclassification. The Iowa Department of Transportation cross-appeals the district court's directives for assessments of highway land. **Affirmed as Modified.**

May, J., delivered the opinion of the court, in which Waterman, McDonald, Oxley, and McDermott, JJ., joined, and in which Christensen, C.J., and Mansfield, J., joined as to part III.A. Mansfield, J., filed an opinion concurring in part and dissenting in part, in which Christensen, C.J., joined.

Robert W. Goodwin (argued) of Goodwin Law Office, P.C., Ames, for appellants.

Brenna Bird, Attorney General, and Matthew S. Rousseau (argued) and Shean D. Fletchall, Assistant Attorneys General, for appellee.

**May, Justice.**

Iowa would be much swampier if it weren't for drainage districts, those special government entities that construct and maintain water drainage systems. But sometimes those systems need to be repaired or improved. When that happens, the costs have to be assessed against the properties that will benefit.

In this case, we consider two questions about those assessments. Both questions concern assessments against a particular kind of property: state-owned highway land under the management of the Iowa Department of Transportation (IDOT).

The first question is whether those assessments are subject to Iowa Code section 307.45 (2023), which limits assessments by "[c]ities and counties" against IDOT highway property. The answer is no. Drainage districts are not cities, counties, or subdivisions of either. They are sui generis.

The second question is whether assessments against IDOT highway property may be based in part on the reduced cost and hassle that *motorists* may experience because drainage-system improvements lead to fewer flood-related road closures. The answer is no. Drainage-district assessments should be based on benefit to the property and, by extension, its owner. So, in the case of IDOT highway property, the assessment should be based on the costs and effort that *the State* will avoid if an improvement is completed.

**I. Background.**

**A. Drainage District Principles.** "Article I, section 18 of the Iowa Constitution empowers the legislature to 'provide for the organization of drainage districts . . . .' " *William & Mary Goche, LLC v. Kossuth Cnty. Bd. of Supervisors*, 5 N.W.3d 650, 651–52 (Iowa 2024). "A drainage district is a special governmental entity that manages water drainage in a particular area to enable more

productive uses of farmland." *Iowa N. Ry. v. Floyd Cnty. Bd. of Supervisors*, 29 N.W.3d 307, 308 (Iowa 2025). Drainage districts only have those limited powers that "the legislature grants them." *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 55 (Iowa 2017) (quoting *Reed v. Muscatine Louisa Drainage Dist. #13*, 263 N.W.2d 548, 551 (Iowa 1978)).

The powers granted to drainage districts, as well as rules governing their creation and governance, are found in Iowa Code chapter 468. *Robinson v. Cent. Iowa Power Coop.*, 21 N.W.3d 842, 850 (Iowa 2025); *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012). Chapter 468 authorizes county boards of supervisors to establish drainage districts. Iowa Code § 468.1. And, at least initially, those boards of supervisors manage the districts. *William & Mary Goche, LLC*, 5 N.W.3d at 652; *see also* Iowa Code § 468.126(1). Later, "the district may be placed under the management of a board of trustees." *William & Mary Goche, LLC*, 5 N.W.3d at 652 (quoting *Fisher v. Dallas County*, 369 N.W.2d 426, 428 (Iowa 1985)); *see also* Iowa Code § 468.500. These trustees are "elected by the persons owning land in the district that has been assessed for benefits." Iowa Code § 468.500(1)(*a*).

Drainage districts construct drainage systems and assess the construction costs "against those properties that benefit from the system." *Abbas v. Franklin Cnty. Bd. of Supervisors*, 16 N.W.3d 305, 308 (Iowa 2025). Those costs are to be apportioned according to the benefits received by the property. *See Union Pac. R.R. v. Drainage Dist. 67 Bd. of Trs.*, 974 N.W.2d 78, 82–83 (Iowa 2022). The greater the benefit that a tract of land receives, the heavier the cost that will be assessed against the tract and, ultimately, paid by the tract's owner. *Id.* at 83.

When the drainage system needs to be repaired or improved, "the board of trustees may consider whether the existing assessments are equitable as a basis

for payment of the expense of the repair." *Id.* at 82; *see also* Iowa Code § 468.65(1). If the board concludes that the existing assessment is "inequitable in any particular," the board "shall by resolution express such finding," appoint qualified commissioners, and order a reclassification. Iowa Code § 468.65(1). The reclassification commission should consider what benefits "are attributable to or enhanced by the . . . repair[] [or] improvement." *Id.* § 468.65(1)(*c*). Ultimately, the commission "shall fix the percentage of actual benefits and make an equitable apportionment of the costs and expenses of such repairs[] [or] improvements." *Id.* § 468.67. Then, after notice and hearing, the board "may affirm, increase, or diminish the" commission's assigned "percentage and assessment of benefits and apportionment of costs and expenses so as to make them just and equitable." *Id.* The resulting reclassification "when finally adopted shall remain the basis for all future assessments unless revised" through another reclassification. *Id.* § 468.65(2).

**B. The Current Case.** With this background in mind, we turn to the case before us. This case involves two drainage districts—Honey Creek Drainage District No. 6 and Pigeon Creek Drainage District No. 2 (Subdrainage District No. 3)—both in Pottawattamie County. Each district is managed by its own board of trustees, all of whom own land within their respective districts.

A proposal was made to improve certain levees managed by the districts. This proposal prompted the districts to begin the process of reclassification, including the preparation of reclassification reports and sending out notice. Important here, IDOT was one of the parties that received notice. That notice was required because a state highway runs through the districts. Therefore, the State—acting through IDOT—is among the owners whose property would be

assessed for any improvements. These assessments are expressly authorized by Iowa Code section 468.43(1), which provides:

> When any public highway . . . extends into or through a levee or drainage district, the commissioners to assess benefits shall ascertain and return in their report the amount of benefits and the apportionment of costs and expenses to such highway . . . , and the board of supervisors shall assess the same against such highway . . . .

Of course, most of the land in the districts is used for private agriculture. The highway covers only a narrow sliver. All told, IDOT property comprises less than 5% of the total land area. And yet, under the reclassification reports, IDOT property would be assessed more than 75% of the costs for the proposed levee improvement. And those new percentages would apply to future improvements going forward. *See id.* § 468.65(2).

IDOT objected to the reclassifications. But the boards unanimously approved them.

IDOT then brought this judicial review action under Iowa Code section 468.83(1). IDOT seeks an order invalidating the reclassifications.

Following discovery, IDOT moved for summary judgment. IDOT noted that the reclassification commission had used lost crop values to determine the benefits that agricultural land would enjoy because of the improvement. Meanwhile, when determining the benefit to IDOT property, the reclassification commission used liquidated damage rates that are charged to contractors who run late in completing IDOT highway projects. These liquidated damage rates are based on a Federal Highway Administration model. The model includes a range of impacts from roadway closures, including: the time that commuters lose when they have to drive around closures, the income (calculated at $23.46 per hour) that commuters theoretically lose because of that extra driving, the vehicle

depreciation related to road-closure delay, and so on. Thus, the proposed assessment on IDOT property was based largely on the benefits that *drivers* might experience if the improvements led to a reduction of water-related road closures. These driver benefits were treated as proxies for the benefit that the highway property would receive.

IDOT believed that this approach was wrong for two reasons. First, according to IDOT, Iowa Code section 307.45(2) requires drainage districts to make their assessments against IDOT property "in the same manner as [assessments] made against private property." Second, and placing section 307.45(2) aside, IDOT believed it was inappropriate for the drainage districts to base assessments against IDOT property on benefits to *users* of highway property rather than just benefits to *the property* itself or, by extension, the property's owner.

The district court granted IDOT's motion and ordered the reclassifications set aside. The court agreed with IDOT that section 307.45 applies and that the reassessment commissioners had failed to comply with its requirements. They failed because the commissioners used one method for determining the benefit to private agricultural ground (crop losses) and another method for determining the benefit to IDOT property (the liquidated damages model).

The district court was more guarded, though, about IDOT's broader argument that the method of determining benefits must focus solely on benefits to the property or its owners, as opposed to its users. The court said that " 'benefits' as used in Chapter 468 is not limited to just those advantages to the land itself but may be broadened in scope to include other advantages so long as there [is] a nexus between the benefit and the land."

The districts appealed, and IDOT cross-appealed. The districts argue that the district court erred by concluding that section 307.45 applies and, more generally, by setting aside the reclassification. IDOT defends the district court's conclusion that section 307.45 applies as well as the court's decision to set aside the reclassification. In its cross-appeal, though, IDOT asks us to clarify that assessments against state-owned highways should be based only on benefits to those highways and, therefore, to the State. Those assessments should not be based on benefits that "highway motorists (i.e., non-owner users)" might enjoy because of drainage improvements.

**II. Standard of Review.**

In direct appeals from drainage district proceedings, we review the district court's grant of summary judgment for correction of errors at law. *Union Pac. R.R.*, 974 N.W.2d at 82. Likewise, we review questions of statutory interpretation for correction of errors at law. *Chi. Cent. & Pac. R.R.*, 816 N.W.2d at 370.

**III. Analysis.**

As explained, this case presents two legal questions. First, we consider whether Iowa Code section 307.45 applies to drainage-district assessments. Then we consider the broader question of how drainage districts should assess highway property.

**A. Iowa Code Section 307.45.** We start with a question of first impression: Does Iowa Code section 307.45 govern assessments by drainage districts? As with all questions of statutory interpretation, we must focus on the statute's text, the words that were "enacted into law." *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020). The text of section 307.45 states that although "[c]ities and counties may assess the cost of a public improvement against the state when the improvement benefits" highway property, those assessments "shall be made

in the same manner as those made against private property." Iowa Code § 307.45(1)–(2). The threshold question, then, is whether drainage districts fit within the category of "cities and counties." If not, then section 307.45 does not apply.

We conclude that drainage districts do not fit within the category of "cities and counties." No one suggests that drainage districts are "cities." So the only question is whether drainage districts can qualify as "counties." The answer is no. We have 99 counties. A drainage district isn't one. *See* 81 Iowa Official Register 2025–2026, at 298–300 (listing Iowa's counties).

We recognize that some older cases have said that drainage districts are at least "political subdivisions" of counties. For instance, IDOT points to *State of Iowa ex rel. Iowa Employment Security Commission v. Des Moines County*, 149 N.W.2d 288 (Iowa 1967). There the question was whether a drainage district was an "employer" who was subject to taxation for the Iowa Public Employees Retirement System under chapter 97B and Social Security under chapter 97C. *Id.* at 289. Under the definitions provided in those statutes, the question turned on whether "a drainage district is a political subdivision or instrumentality of the state or any of its political subdivisions." *Id.* We determined that drainage districts fit within that category because:

> Counties are political subdivisions of the state. *And an organized drainage district is a political subdivision of the county* in which it is located, its purpose being to aid in the governmental functions of the county. It is a legally identifiable political instrumentality.

*Id.* at 291 (emphasis added) (citation omitted).

We made similar comments in *Reed v. Muscatine Louisa Drainage District #13*, 263 N.W.2d at 551.

In more recent cases, though, we have suggested a different view. In *Fisher v. Dallas County*, the question was whether a drainage district can be sued for money damages in tort. 369 N.W.2d at 429. We noted that we had traditionally refused such suits because of "the limited nature of [drainage districts'] existence" and, more specifically, the fact that a drainage district "has no corporate existence for [the] purpose" of such tort suits. *Id.* But the plaintiffs in *Fisher* argued that a different approach was required by Iowa Code chapter 613A, which makes "every municipality" subject to some tort suits, and which defines "municipality" to mean "city, county, township, school district, and any other unit of local government except a soil conservation district." 369 N.W.2d at 429–30 (quoting Iowa Code §§ 613A.1–.2). We rejected this argument. *Id.* at 430. We said that "a drainage district is merely an area of land, not an entity subject to a judgment for tort damages." *Id.* And we specifically held "that a drainage district is not a 'municipality' within the meaning of Iowa Code section 613A.1(1)," which defines "municipality" to include "county." *Id.*

Then, in *Gard v. Little Sioux Intercounty Drainage District of Monona & Harrison Counties*, we defended *Fisher*'s reasoning as well as its conclusion that drainage districts were not subject to tort suits. 521 N.W.2d 696, 698 (Iowa 1994). We also distanced ourselves from comments in *Reed* and *Des Moines County* that had "referred to drainage districts as political subdivisions or instrumentalities." *Id.* Instead, we emphasized *Fisher*'s view that a drainage district does *not* fall within section 613A.1(1)'s definition of "municipality," which (again) includes counties. *Id.*

So *Fisher* and *Gard* both recognized the obvious point that drainage districts aren't counties. And *Gard* at least undermined the idea that drainage districts are subdivisions of counties. But neither case squarely rejected *Des*

*Moines County*'s idea that "an organized drainage district is a political subdivision of the county." 149 N.W.2d at 291. Today, we take that next step and formally hold that drainage districts are not subdivisions of counties.

We have long said that drainage districts are sui generis, *Bd. of Sup'rs v. Dist. Ct.*, 229 N.W. 711, 712 (Iowa 1930), which means "[o]f its own kind or class; unique or peculiar," *Sui Generis, Black's Law Dictionary* 1740 (12th ed. 2024). And we can point to several features that separate drainage districts from counties. For instance, drainage districts are authorized by their own special constitutional provision, article I, section 18 of the Iowa Constitution, which is separate from the provisions that address counties, like article XI, section 2. And, unlike counties, drainage districts can have their own separate management by land owners who are not officers or employees of a county. *See* Iowa Code §§ 468.500(1)(*a*), .506. And, unlike counties, drainage districts can extend across county lines. *See id.* §§ 468.83(2), .119.

Of course, there is no doubt that counties benefit from the valuable services that drainage districts provide. Likewise, counties assist drainage districts in many ways, including the receipt of petitions for the establishment of districts, *id.* §§ 468.6–.8, initial establishment of districts, *id.* § 468.1, services of the county auditor, *id.* § 468.45(1), and services of the county treasurer, *id.* § 468.56. Thus counties and drainage districts share a sort of symbiosis. But symbiosis is not unity. Indeed, governmental entities often assist one another while remaining independent. For instance, even though counties provide school resource officers and other services for school districts—and even though counties surely benefit from the efforts of school districts—none of that means that school districts are subdivisions of counties, or vice versa. Rather, counties and school districts remain separate and distinct.

Likewise, despite their many connections, we believe counties and drainage districts are separate and distinct. Drainage districts are neither counties nor subdivisions of counties. *Cf. Bd. of Water Works Trs.*, 890 N.W.2d at 70 (characterizing drainage districts as a "political subdivision *of the state*" (emphasis added)). Therefore, we agree with the districts that Iowa Code section 307.45's limit on assessments by "[c]ities and counties" does not apply to drainage-district assessments. We reject the district court's contrary conclusion.

**B. Assessing Highway Property.** We now address IDOT's cross-appeal. IDOT argues that the district court should have ordered that highway property must be assessed based on the benefits to the property and its owner, the State, and *not* based on benefits to non-owners, such as the commuting public. We agree.

1. *Analysis.* Article I, section 18 of the Iowa Constitution directs that the construction and repair of drainage systems will be financed "by special assessments upon the property benefited thereby." Consistent with this, Iowa Code section 468.43(1) provides that when a "public highway or other public land extends into or through" a drainage district, the district shall assess costs "against such highway and land" according to the "benefits" received by "such highway and land." We have not previously addressed how to assess "benefits" to a highway under Iowa Code section 468.43(1). However, section 468.43(1) is analogous to section 468.42, which provides for the assessment of benefits to railroad property. 1956 Op. Iowa Att'y Gen. 172–73 (1956). And we have had several opportunities to consider the assessment of benefits to railroad property. *See, e.g., Chi. & N. W. Ry. v. Dreessen*, 52 N.W.2d 34, 36 (Iowa 1952); *Chi. & N. W. Ry. v. Bd. of Sup'rs*, 153 N.W. 110, 111 (Iowa 1915). Most recently, in *Union*

*Pacific Railroad v. Drainage District 67 Board of Trustees,* we summarized our statutes and caselaw in this way:

> In the assessment of benefits [to railroad property], we look to the benefits, or advantages, of having a drainage improvement on the property. We consider the past flood damage, and in times of flood, the anticipated damages and costs of maintaining the right-of-way without the drainage improvement. *In other words, the commission should ask: How much money and effort would a railroad company be saving if it had this improvement—a tile or a ditch—to divert water out of its way?*

974 N.W.2d at 84 (emphasis added) (citation omitted).

We think a similar approach should apply in the analogous context of highway property. Just as assessments of railroad properties should be based on the "money and effort" that the owner—the "railroad company"—will save, assessments of highway property should be based on the money and effort that will be saved by the highway's owner, the State. *Id.* Benefits to non-owners— such as drivers—are not part of that calculus.

2. *Counterarguments.* We have considered all of the districts' counterarguments. For example, the districts point out that "private railroad property" and also "private toll road property" are different from public highway land because, in those cases, "the loss of revenue" from flood-related closures "is known." Conversely, "[p]ublic highways do not receive nor record" revenue in the form of "tolls that are paid and received." But our cases have not said, and we are not saying, that benefits are limited to lost revenues. Rather, we have acknowledged that property owners could benefit in other ways. For instance, in *Union Pacific Railroad,* we mentioned that railroad owners would enjoy the benefit of avoiding the costs of flood-related maintenance and repair. *Id.* The same would be true for IDOT.

The districts also point to the presumption that reclassifications are correct. *Martin v. Bd. of Supervisors*, 100 N.W.2d 652, 655 (Iowa 1960). Because of this presumption, the districts argue, IDOT is foreclosed from attacking the reclassification because IDOT has not provided an alternative reclassification that includes proposed assessments for "all" or "at least a determining portion of" the land parcels in the districts. We disagree. IDOT has pointed to fundamental infirmities in the methodology that underpins the reclassification. This was enough to overcome any presumption that the reclassification was correct.

Finally, we note that the districts have sometimes implied that the reassessment was required because IDOT tried to force the districts to make an expensive improvement that will mostly benefit IDOT but will provide little benefit to agricultural land. The districts imply that this justifies including traveler benefits in the assessment of IDOT highway property so that the State will have to pay a large share of the improvement costs.

We reject this approach. For the reasons already explained, we believe our statutes and caselaw preclude assessing IDOT property for benefits enjoyed by non-owner travelers.

Moreover, we think the districts' narrative overlooks some important points that were clarified at oral argument. For one thing, it does not appear that IDOT attempted to force this improvement project on the districts. Although some IDOT staff were initially interested in exploring the project, IDOT never formally endorsed it. And now, IDOT has decided to pursue other means of protecting the highway against flooding, such as armoring the shoulders.

That ties into another important point that was clarified at oral arguments: when IDOT wishes to make highway improvements for legitimate transportation

purposes, it simply does so with state money. It does not need the drainage districts to act on its behalf.

And that, in turn, ties into what might be the most important equitable consideration in this case. At oral argument, the districts' counsel repeatedly confirmed that the decision of whether to go forward with the proposed improvement—or not—is wholly discretionary. And that discretion lies squarely in the hands of the districts' boards. *See* Iowa Code § 468.126. There is no need to worry, then, that the districts might be forced to make improvements that their boards consider unnecessary or too expensive.

**IV. Conclusion.**

We affirm the district court's decision to set aside the reclassification. As explained, however, our reasoning differs from the district court's. Unlike the district court, we conclude that Iowa Code section 307.45 does not apply to assessments by drainage districts. Also, we conclude that drainage-district assessments against IDOT highway property should be based solely on benefits to that property and, by extension, its owner—the State. Those assessments should not be based on benefits to non-owner drivers who merely use the property.

**Affirmed as Modified.**

Waterman, McDonald, Oxley, and McDermott, JJ., join this opinion, and Christensen, C.J., and Mansfield, J., join this opinion as to part III.A. Mansfield, J., files an opinion concurring in part and dissenting in part, in which Christensen, C.J., joins.

**Mansfield, Justice (concurring in part and dissenting in part).**

I concur in part III.A of the court's opinion and dissent as to part III.B. Concerning part III.A, I agree that the reclassifications made by the trustees of the two drainage districts should be set aside. But in lieu of joining part III.B, I would affirm the reasoning of the district court, which I believe to be more sound on this issue.

### I. Both Sides in This Case Are Incorrect About Benefits.

Both sides in this litigation advance extreme positions. The drainage districts want the Iowa Department of Transportation (IDOT) to be responsible for over 75% of the drainage district costs now and into the future. This is based on a model that assigns a monetary value to the time lost by travelers when there is a highway closure. The districts' approach seems to me quite arbitrary. Additional travel time is a burden, but it's not the same level of burden as farmers suffer when their fields are inundated and their crops are destroyed.

IDOT, meanwhile, wants to ignore inconvenience altogether and act as if a closed highway is no less valuable than an open one. In that case, why even build highways? In IDOT's view, the benefit to a highway right-of-way for assessment purposes is limited to the costs of "rerouting traffic around flooded areas and clearing debris from the highway surface after flood waters recede." IDOT calculates that number as $304,658.48 per flood event. That approach seems equally arbitrary to me.

I would not endorse either approach but would instead remand for a trial as the district court had ordered.

**II. Benefit to Land Depends on the Use of the Land, Not Its Ownership.**

Chapter 468 requires that assessments be based on *the benefit to the land.* *See* Iowa Code §§ 468.39 (2023) (requiring classification "according to the benefit to be received by each of such tracts from such improvement"), .40(2) (referring to "the benefits as to the lands"), .41(1) (referring to "the lands benefited"), .42 (requiring the commissioners to "determine and assess the benefits to the property of any railroad company"), .43(1) (requiring the commissioners to "ascertain and return in their report the amount of benefits and the apportionment of costs and expenses to such highway or other public land"), .65(1) (referring to "lands benefited by the improvement").

The benefit to land depends on what the land is used for, not who happens to own it. If land is used for farming, the benefit to the land is the avoidance of crop-destroying floods. If land is used for a railroad or a highway, the benefit is that of keeping a right-of-way open. Section 468.40(3) confirms this point. It states that "[w]hen the land is a state-owned lake or state-owned wetland, the commissioners shall ascertain the benefits realized from removing excess water and shall not consider any benefit realized if the state-owned lake or state-owned wetland were drained or converted *to another land use.*" *Id.* § 468.40(3) (emphasis added). This specific language prohibiting the consideration of another land use for lakes and wetlands can only mean one thing: the general rule is to calculate benefit *based on land use.*

An early drainage district case, *Chicago & N. W. Ry. v. Hamilton County* (*In re Johnson Drainage Dist. No. 9*), 118 N.W. 380, 382 (Iowa 1908), also demonstrates that benefit is determined by use. In that case we said, "Neither railroad property nor highways are *used* as lands are ordinarily used, and hence the benefits to be derived by such property from the improvement are of an

entirely different character from those conferred upon agricultural lands." *Id.* (emphasis added).

Even before the days of drainage districts, in the municipal taxation context, we observed, "In determining the benefits accruing to such lands, a controlling fact to be considered is the purpose for which they are held." *Durant v. Kauffman,* 34 Iowa 194, 197 (1872).

When property is privately owned, the owner's financial gain from the improvement is often a fair proxy for the benefits to the land. The improvement enhances the use of the land, providing a dollars-and-cents gain to the owner. But government exists to serve the people rather than itself. Government usually holds property not to make a profit, but to further a public purpose. As one of IDOT's employees put it in this case, "The state sees no actual loss or gain when a road is open or detoured." So relying on a government agency's balance sheet as the only measure of benefits for public land results in a cramped, unrealistically low figure.

Take an example. Two parcels of land sit side-by-side. One is a private parking lot; the other is a free public parking lot. If flooding occurs, both are unusable for the same period of time. But under the majority's formula, the private owner would pay an assessment based on the costs of cleaning up and reopening *and lost revenue,* while the government would pay an assessment based only on the costs of cleaning up and reopening. That's wrong.

Here's another illustration. Suppose the state started charging a toll for Interstate 29 and Interstate 680. Under the majority's formula, the drainage districts would now be providing a dramatically higher benefit. That's because the state would stand to lose a lot of revenue for each day that the two interstate highways were closed. That fact would justify a much higher assessment on the

state than before. But in reality, the benefit to the state's land from the drainage improvements would be the same as it always had been.

Ultimately, drainage district assessment does not depend "upon a showing of benefits in the shape of an immediate increase in market values, but actual values, intrinsic value or worth." *Chi., R. I. & P. Ry. v. Wright Cnty. Drainage Dist. No. 43*, 154 N.W. 888, 889 (Iowa 1915). In *Chicago, R. I. & P. Ry. v. Wright County Drainage Dist. No. 43*, we were speaking about a railroad assessment, but surely the same principle applies to a publicly owned highway. We consider the increase in intrinsic value, not in dollars and cents reflected on IDOT's balance sheet.

There is nothing arcane about the approach that the district court and I both favor. A Missouri appellate court followed the appropriate analysis in sustaining a drainage assessment on a major state highway in *Tri–County Levee District v. Missouri Highway & Transportation Commission* (*In re Tri–County Levee District*), 42 S.W.3d 779, 788 (Mo. Ct. App. 2001). In that case, "[t]he Commissioners assessed the benefits based upon their estimate of increased physical efficiency and decreased maintenance costs afforded by Tri–County's levees." *Id.* This included not only consideration of "costs for the post-flood cleanup and decreased paving costs due to protection from flooding," but also "the average number of days per year the road would be closed in the absence of the levee." *Id.* Such an approach was appropriate in the Missouri court's view and makes sense here.

By contrast, the majority's decision to exclude "benefits to non-owners, such as the commuting public," is too simplistic. As the district court pointed out, we consider benefits to users of railroad rights-of-way when we calculate the benefit that a railroad right-of-way receives from a drainage improvement. The

same should be true with users of highways. If the benefit to land is based on the use of land, users of that land must be taken into account.

**III. Our Recent *Union Pacific Railroad* Decision Does Not Address This Benefit Question.**

The majority reads *Union Pacific Railroad v. Drainage District 67 Board of Trustees* too expansively. 974 N.W.2d 78 (Iowa 2022). The issue in that case was whether a railroad could be charged for half the cost of a drainage improvement because approximately half the construction costs arose from compliance with federal regulations. *Id.* at 81. We said no, given that assessment should be based on the share of benefits accruing to the railroad, not the share of construction costs attributable to it. *Id.* at 84–85.

In the course of our opinion, we discussed "what constitutes 'benefits' under the reclassification provision contained in Iowa Code section 468.67." *Id.* at 83. We observed,

> While the statute does not provide a definition of "benefits," the caselaw shows that benefits could be based on a number of factors including the mileage of railroad tracks in the district, the past flood damage, the anticipated flood damage if the channel has not been improved, the interruption of the train traffic, and the costs of rerouting because of floods.

*Id.* And a little later, we added,

> We consider the past flood damage, and in times of flood, the anticipated damages and costs of maintaining the right-of-way without the drainage improvement. In other words, the commission should ask: How much money and effort would a railroad company be saving if it had this improvement—a tile or a ditch—to divert water out of its way?

*Id.* at 84 (citation omitted).

I fail to see within this general and not very precise discussion any "rule" that one cannot consider benefits to the commuting public in assessing the benefits of a drainage district to public highway land. After all, the very point of

a public highway is to serve the commuting public, just as the purpose of a railroad track is to serve the railroad. And our opinion was actually addressing a different issue—namely, whether assessments could be based on the share of construction costs attributable to the railroad's need to comply with federal regulations. *See id.* at 81.

**IV. Conclusion.**

An affidavit in the record indicates that in 2019, IDOT contacted the districts about having this project done. Regardless, it seems clear that at this point IDOT has no interest in the project if it would have to pay more than 75% of the costs. This strongly suggests that the boards' reclassification vastly overstates the benefits to the highway lands within the district. So, again, I join part III.A of the court's opinion. However, I believe it is illogical and legally wrong to conclude that an appropriate assessment cannot consider the benefits of a functioning highway as opposed to a nonfunctioning one. Therefore, I cannot join part III.B.

For the foregoing reasons, I concur in part and dissent in part.

Christensen, C.J., joins this concurrence in part and dissent in part.